[Sac. No. 2434. In Bank.—September 23, 1918.]

## IDA B. PIPER, Respondent, v. STEWART S. HAWLEY et al., Appellants.

INJUNCTION—DISCRETION.—The granting or refusing of a preliminary injunction is a matter resting largely in the discretion of the trial court.

ID.—APPEAL—CONFLICT OF EVIDENCE—RULE.—Where there is a substantial conflict in the evidence regarding an issue which may affect the discretion of the court in passing upon the application for a preliminary injunction, the order made will not on appeal be overthrown merely because there may be considerable or even preponderating evidence which, if believed, would have led to a contrary conclusion.

ID.—EFFECT OF GRANTING OR DENIAL OF PRELIMINARY INJUNCTION.—The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate right in controversy, but merely determines that the court, balancing the respective equities of the parties, concludes that,.pending a trial on the merits, the defendant should or should not be restrained from exercising the rights claimed by him.

ID.—REMOVAL OF SACK LEVEE—PROTECTION FROM FLOOD WATERS—TEM-
PORARY MANDATORY INJUNCTION—DISCRETION NOT ABUSED.—Where
at a time of most unusual storm and flood a river basin had become
surcharged with flood waters which were steadily rising and threat-
ening to cross a ridge separating such basin from another basin
and descend in destructive volume upon lower lands, it was not an
abuse of discretion to issue a temporary mandatory injunction re-
quiring the removal of an earth embankment and temporary sack
levee from along the top of the ridge, which had been built to pro-
tect the basin from overflows.

APPEAL from an order of the Superior Court of Yolo
County directing the issuance of a temporary mandatory in-
junction. W. A. Anderson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Arthur C. Huston, and Harry L. Huston, for Appellants.

Elmer W. Armfield, John S. Partridge, and Arthur B.
Eddy, for Respondent.

RICHARDS, J., *pro tem.*—This is an appeal from an order
directing the issuance of a temporary mandatory injunction
requiring the removal of a certain earth embankment and
temporary sack levee from what is known as Knights Landing
Ridge, in the county of Yolo. The facts out of which the
controversy between the parties hereto arose are substantially
as follows: The Sacramento River flows through the Sacra-
mento Valley in a general *northerly* to *southerly* direction.
During its course therein and from a point near its entry into
the valley to its mouth it passes between banks raised above
the level of the adjacent lands on each side of the river, these
lands lying in depressed basins or troughs, varying in width
from two to seven miles, which at intervals are separated
from each other by low ridges which have been built
up by the sedimentary deposits of streams which inter-
sect these basins and are tributary to the Sacramento River.
On the west side of the river are two main basins, the Colusa
Basin and the Yolo Basin, between which is what is known
as the Knights Landing Ridge, which extends from the bank
of the river at Knights Landing in a southerly and westerly
direction toward the town of Yolo, and which was originally
built up by the sedimentary deposits of Cache Creek. The

Colusa Basin lies to the northward of this ridge and the Yolo Basin to the southward, and the levels of each of these basins have a gradual downward trend toward the south, except as intercepted by this ridge. The natural elevation of the ridge at and near the bank of the river is thirty-eight feet, which increases as the ridge extends westerly. During the winter season flood waters formerly collected in the Colusa Basin from rains and from the numerous streams which flow into it and also, in times of high water, from the overflow of the Sacramento River, and these, when they reached an elevation in excess of thirty-eight feet, would flow over the Knights Landing Ridge at the point of its lowest elevation, making their way into the Yolo Basin and thence formerly through Cache Slough into the main river. The lands of the plaintiff herein are situated on Knights Landing Ridge about three thousand six hundred feet westerly from Knights Landing on the river bank and at an elevation from forty-one to forty-two feet, according to the official data of the State Engineering Department. In the year 1909, during a period of severe flood, the waters collecting in the Colusa Basin, augmented by the overflow of the river, reached a higher elevation than that of the ridge near the river. Reclamation District 108, with other land owners having land holdings in the Colusa Basin, in order to relieve the situation, attempted to make a cut through Knights Landing Ridge with a view to discharging the waters then collected in the Colusa Basin into the Yolo Basin. One T. F. Laugenour, a land owner in the Yolo Basin below Knights Landing Ridge, applied to the superior court of Yolo County for an injunction to restrain the above parties from cutting through the ridge. In May, 1910, said court gave its judgment granting such injunction restraining the defendants in that action from in any manner excavating, cutting, or injuring the Knights Landing Ridge, or doing any act or thing whatever in, on, or about the ridge which would cause or tend to cause or permit the waters above the ridge to escape through or over the ridge, until such time as a canal could be built, under the direction of the court, to such point that the waters of the Colusa Basin could be discharged without injury to the rights of the plaintiff, Laugenour, and others owning land below the ridge. The judgment further provided that such canal should have an elevation, on both sides, of sufficient height to keep back the

waters of Cache Creek, and the carrying capacity of the canal should be sufficient to take care of the drainage through the same. The judgment further provided that any cuts or excavations made in the ridge should be made under the direction of the court, and that the ridge should be safeguarded from further destruction or injury. Subsequently and in the year 1913 a drainage district was created by an act of the legislature of that year (Stats. 1913, p. 109), having for its purpose the cutting of Knights Landing Ridge and the construction of a canal through the same to a point near the sink of Cache Creek in the Yolo Basin. This act, in providing for the creation of the proposed drainage district, made express reference to the act of the legislature approved December 24, 1911 (Stats. Ex. Sess. 1911, p. 117), adopting the report of the California Debris Commission transmitted to the federal government on June 27, 1911, providing for a plan of reclamation along the Sacramento River and its tributaries and creating a reclamation board and defining its powers and duties. Said act also directed that the board of drainage commissioners to be created in accordance with its terms should take such steps as should be necessary "to open a cut through Knights Landing Ridge in Yolo County and to construct a canal leading from said cut for the purpose of draining and disposing of the waters of Colusa Basin by carrying the same to the head of the proposed Yolo by-pass . . . as defined by and in accordance with the general plan of the California Debris Commission." The act further provided that "No water shall be permitted to flow through any cut or excavation in said Ridge provided to be made in this act until the Canal to be constructed as hereinbefore provided shall have been completed so as to convey the waters flowing or to flow through said cut to the head of said Yolo by-pass in a manner satisfactory to said Reclamation Board: Said Reclamation Board shall have power to direct the method of the construction of said cut, canal and levees." It will thus be seen that this act of the legislature creating the Knights Landing Ridge Drainage District and defining its purposes and powers was in harmony with and in furtherance of the earlier and larger plan for the confining or returning of the overflow waters of the Sacramento River to their natural channel, preventing this recurring overflow and reclaiming the lands of the several basins lying along the course of said river.

(Stats. 1913, p. 109.)   Upon the organization of this drainage district under said act, the defendants in the aforesaid action moved the superior court of Yolo County for a modification of its injunction against the cutting of the ridge so as to permit said district to make a cut of sufficient width through the ridge to permit the passage of dredgers in order to construct the canal below such cut, the said penetration of the ridge to be temporary and to be filled when its immediate purpose was accomplished so that the waters accumulating above the ridge would not be permitted to flow through it until the canal which was to dispose of them below had been completed. Upon the hearing on this motion the said court made an order approving the plan of the drainage district for the construction of the permanent works in the ridge and canal below for which it provided, and so modified its former injunction as to permit the temporary penetration of the ridge applied for, specifically directing how such work should be done, and providing for the restoration of the ridge to its former state when the dredgers had sufficiently done the work for the doing of which passage through the ridge was required. The order also provided that all of this work should be completed on or before October 15, 1914, or at such further time as the court should direct. The defendants in said action, having procured the foregoing order, dismissed their appeal from the previous judgment of injunction; and pursuant to such modification thereof, the drainage district began making the excavation of the ridge in accordance with the direction thereof. Ida B. Piper, the plaintiff in the present action, was not a party to the former action and does not appear to have interposed any objection to the progress of the work being done by the drainage district by virtue of the terms of the act of its creation nor by virtue of the modification of the injunction granted in the former case. The work proceeded to the point of the refilling of the gap in the ridge so as to put the same in condition to prevent any water from flowing through or over it until the lower work upon the canal had been completed. In order to do this the drainage district apparently deemed it necessary to raise the summit of the ridge at the point of the cut and for some distance on both sides of the same to such a height as would prevent any waters from passing over it in that vicinity even at extreme high water in times of flood. Accordingly, the top of the ridge was raised

from its former natural elevation of thirty-nine feet at points to the eastward of the plaintiff's lands to an elevation of from forty-eight to fifty feet. Not long thereafter occurred the heavy flood of the winter of 1914–15, said to be the largest flood known in the history of the region, reaching its maximum in February of the latter year, as a result of which the Colusa Basin filled and the waters threatened to cross the ridge at points to the easterly of the plaintiff's premises. In order to prevent this result, Reclamation District No. 730, one of the defendants and appellants herein, caused to be constructed a temporary sack levee along the top of the ridge extending farther westward from the point where the increase of elevation accomplished by the work of the drainage district had ceased, toward the plaintiff's lands. The effect of both of these changes in the elevation of the ridge at points east of the plaintiff's lands was to check the overflow of the increasing waters at their former point of exit and to cause them to further accumulate in the Colusa Basin until they reached an elevation which placed the plaintiff's premises in immediate danger of overflow. This was the state of things when the plaintiff herein commenced the present action on February 15, 1915. By this action, and especially by the temporary mandatory injunction applied for therein, this plaintiff sought to have all obstructions removed from the top of the ridge to the eastward of her lands which interfered with the free passage of the flood waters of the Colusa Basin over the ridge at their former point of exit when they attained a height in excess of thirty-nine feet; or, in other words, to have the natural elevation of the ridge at these points restored. Upon the hearing of the application for this temporary order much testimony was presented, after the hearing of which the court made the order for such mandatory injunction *pendente lite,* from which this appeal has been taken.

Reclamation District No. 730 lies, as to the lands included within it, to the southward of Knights Landing Ridge, in the Yolo Basin. Neither it nor other appellants herein were parties directly engaged in the performance of the work of making the cut through the ridge or the canal below, provided for in the act of the legislature creating the Knights Landing Drainage District. The interest of these appellants in seeking to prevent the flood waters of the Colusa Basin from over-

topping the Knights Landing Ridge was primarily that of preventing the overflow of said waters upon their own lands. Knights Landing Ridge Drainage District, which had imme- diately in charge the making of said cut and the construc- tion of the canal below it, was also made a party to this ac- tion and was present by counsel in court when the hearing was had upon the application of the plaintiff for this injunc- tion and offered no resistance to the granting of the same, although said injunction was mandatory in character and re- quired the removal of the more permanent portion of the obstruction of the passage of these waters over said ridge which had been placed there by said drainage district in the course of making said cut. It would seem to be manifest, therefore, that the effect of the removal of the obstruction from the ridge provided for by the order complained of by the other defendants, who are the appellants herein, would not be that of causing any injury to the construction work which had been or was in process of being done by the drain- age district, but would be merely that of permitting the ac- cumulating waters of the Colusa Basin to pass over said ridge, as formerly, at the point of its lowest natural level and flow down into the Yolo Basin and thus reach and overflow the lower lands of the appellants herein.

The foregoing review of the facts of this case removes from our consideration in connection with it a number of the ques- tions which were involved and elaborately considered in the case of *Gray* v. *Reclamation District No. 1500,* 174 Cal. 622, [163 Pac. 1024], wherein it was held that the defendant in that action, while engaged in carrying forward the plans adopted by both the federal and state governments for the confinement of the waters of the Sacramento River to their natural channel, thus increasing the navigability of the river and thus also accomplishing the reclamation of the vast tracts of low-lying land comprising the several basins adjacent to the course of said river, could not be prevented from proceed- ing with such work at the suit of some land owner in one of said basins who might be temporarily injured by the overflow of his lands consequent upon the prosecution of such work, and that the injury of such land owner was in such a case *damnum absque injuria.* The court also in that case decided that the several basins lying along the west side of the Sacra- mento River did not possess the characteristics of water-

courses as that term is therein defined, so as to require that
all waters that might from any source be collected in them
were.to be permitted to take their natural course without ob-
struction.  The court also decided in the same case that the
conditions which existed along the west side of the Sacra-
mento River in respect to these several basins and their col-
lected waters were not those presented for consideration in
the case of *Miller & Lux* v. *Madera Canal etc. Co.,* 155 Cal. 59,
[22 L. R. A. (N. S.) 391, 90 Pac. 502], wherein the annually
recurring floods made the stream wider during the period of
such floods so as to include therein adjoining lands, in which
case such regularly recurring flood waters were to be deemed
a part of the ordinary flow of the stream.  The chief point
of departure between the case of *Gray* v. *Reclamation District
No. 1500, supra,* and the case at bar arises from the fact that
in the Gray case the defendant was acting in accordance with
the declared policy of the state and federal governments in
their combined efforts to increase the navigability of the
Sacramento River by confining its waters to their natural
channel, and also to work the reclamation of the vast areas of
fertile land belonging to the state or its citizens, lying within
these several basins along both sides of the river; while in
the instant case the defendants were acting in the purely
private capacity of seeking to protect their lower lying lands
from overflow, and were not in so doing promoting either of
the public purposes commended by the court in the Gray case.
The case of *Sanguinetti v. Pock,* 136 Cal. 466, [89 Am. St. Rep.
169, 69 Pac. 98], in some of its aspects more nearly resembles
the case at bar in the respect that in that case each of the
parties thereto were private parties occupying the relation of
upper and lower owners of lands across which there was a de-
pression wherein surface waters were collected in the winter
season and into which at times the flood waters of Mormon
Slough overflowed and intermingling there with the surface
waters descended from the plaintiff's to the defendant's
lands.  The defendant undertook to so obstruct this depres-
sion as to prevent the flow of both sorts of waters upon his
land and to cause them to collect upon and flood the plain-
tiff's land.  The court in that case held that the defendant,
while he had the right to protect his land from the overflow
waters of Mormon Slough, had no right to obstruct the down-
ward flow of the surface waters in their natural and accus-

CLXXIX Cal.—2

tomed course from the plaintiff's lands to his own, and that in connection with whatever obstruction he constructed against the overflow waters of Mormon Slough he must have first provided for a sufficient canal or ditch to carry all such surface waters as were accustomed to flow in said depression from the plaintiff's lands to his own.

In the case at bar the trial court, upon the hearing of the application for a temporary injunction, was presented with an extraordinary situation. It was a time of most unusual storm and flood. The Colusa Basin had become surcharged with waters which were steadily rising and threatening to obliterate the levees which had been built for the protection of the several reclamation districts in the region, and even to destroy the embankment and sack levees along the top of the ridge and descend in destructive volume upon the lower lands. Another storm was impending. If the plaintiff was refused the immediate relief demanded, it was made to appear that not only her lands but also the lands of other and more remote owners along the ridge would also be overflowed. The volume of the rising waters consisted of intermingled surface and flood waters, the proportion of each being impossible of speedy or exact ascertainment. The particular defendant which had placed the main and more permanent obstructions along the tops of the levee at its point of lowest elevation was not objecting to the removal of the material which had been placed there by it, and thus evidently did not anticipate any substantial injury to the work it had been carrying on by the restoration of the ridge at that point to its former natural elevation. If this were done the maintenance or removal of the temporary sack levees which had been put in place by the other defendants would become inconsequential, since the overflow waters would pass over the lowest part of the ridge and to the eastward of said defendants' lands. Under such unusual and extraordinary conditions the trial court was invested with a very large discretion as to what temporary and immediate order should be made in the premises, and unless it should be made to very clearly appear that such discretion had been abused, its order so made should be sustained. Conceding the right of the appellants to protect their lands from overflow by such of the accumulated waters of the Colusa Basin as were strictly flood waters from the Sacramento River under the authority of *Sanguinetti* v. *Pock,*

*supra,* they had not the right under the same authority to maintain obstructions upon the ridge which would also have the effect of restraining such of said waters as were strictly surface waters from passing over the ridge at its lowest point of natural elevation in their accustomed course and way. Whether it was possible in the emergencies of the moment to make a practical order which should undertake to distinguish and divide these rising waters and the right of the respective parties as to their retention or passage, was a matter intrusted almost entirely to the trial court's discretion. In the case of *Miller & Lux* v. *Madera Canal Co., supra,* the rule, as well stated by Mr. Justice Sloss, is applicable to the extreme conditions presented by the case at bar: "It would be superfluous to cite authorities to show that the granting or refusing of a preliminary injunction is a matter resting largely in the discretion of the trial court. Where there is a substantial conflict in the evidence regarding an issue which may affect the discretion of the court in passing upon the application for such injunction, the order made will not, on appeal, be overthrown merely because there may be considerable or even preponderating evidence which, if believed, would have led to a contrary conclusion. The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate right in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the rights claimed by him."

In the case of *Jones* v. *California Development Co.,* 173 Cal. 565, [L. R. A. 1917C, 1021, 160 Pac. 823], the court, quoting from 3 Farnham on Water and Water Rights, section 889, declared that: "No arbitrary rule can be laid down which will govern all cases, but each case must be dealt with upon its facts, applying the rule which will be reasonable under the circumstances, under the general rule that the water should be allowed, as far as possible, to seek its natural outlet." Upon these authorities, from a careful examination of the record before us, we are unable to say that there was any abuse of discretion on the part of the trial court in making the order complained of.

In this case the respondent moved the dismissal of the appeal upon the ground that the questions involved therein had

become moot questions, for the reason that the things commanded to be done by the mandatory injunction had been done, and upon the further ground that the Knights Landing Ridge has been cut and the by-pass and levees constructed under and in accordance with the Statute of 1913 providing therefor, and which will hereafter conduct the waters of the Colusa Basin through the ridge and into the Yolo by-pass, thus avoiding future floods. As to the first of these grounds the motion is clearly not good, for to hold otherwise would be to deprive a party rightfully resisting an improper preliminary mandatory injunction of his remedy for costs and damages by the simple process of executing the unlawful order. As to the second ground of said motion, while it may be true in the instant case that the removal of the source of trouble may have rendered unimportant its final determination, still the appellants, had our conclusion been otherwise as to the right of the trial court to make the order complained of, would have been entitled to their damages and costs as a result of a reversal of such order; besides, the questions involved are of wider moment than the particular case because of the great importance to the state of California of the settlement of the law relating to the waters and adjoined lands of its two great internal waterways.

The motion to dismiss is denied. The order is affirmed.

Shaw, J., Wilbur, J., Sloss, J., Melvin, J., Lorigan, J., and Angellotti, C. J., concurred.

Rehearing denied.