[Civ. No. 15106. Second Dist., Div. One. June 12, 1946.]

THE PEOPLE ex rel. DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF IMMIGRATION AND HOUSING, Respondent, v. M. K. MOREHOUSE, Appellant.

W. P. Butcher for Appellant.

Robert W. Kenny, Attorney General, and Carl S. Kegley, Deputy Attorney General, for Respondent.

DORAN, J.—The action herein is one to abate a nuisance and enjoin the appellant and other defendants from maintaining certain apartments in the city of Santa Barbara, in alleged violation of the California Health and Safety Code.

The alleged violations, as particularized in the complaint, include inadequate toilet and bathing facilities, filthy and insanitary conditions, inadequate ventilation and air space, leaky plumbing and gas pipes, sleeping in kitchens, defective and unsafe stairways, walls, floors, fixtures, etc. The property involved consists of a two story frame building at 1127 Chapula Street contining seven apartments on the first floor and seventeen apartments on the second floor; a two story frame building at 1123 Chapula Street with four apartments on the first floor and three apartments on the second floor; and Parcel C, "known as one story frame structures at rear of and connected to No. 1123 and No. 1127 Chapula Street, containing two single sleeping rooms and 12 apartments." The appellant testified that she had owned and operated the apartments for about thirty-five years. Several photographs were introduced in evidence showing the interior of various apartments and alleged defective conditions, the photographs being identified by the appellant.

The complaint was filed on May 2, 1945, appellant filed a demurrer thereto, but no answer, and on May 15, 1945, the demurrer and an order to show cause *in re* a preliminary injunction, were heard together, and the demurrer overruled. Thereafter, the trial court heard evidence in reference to the preliminary injunction, including appellant's testimony; certain stipulations in open court were entered into, and a preliminary injunction granted. Testimony was also received from John Frederick Murphy, an architect who had inspected the Morehouse property; from Dr. Roome, physician and city health officer; and from Buren Thorleifson, state housing inspector. In answer to the court's inquiry whether appellant wished to produce any evidence, appellant's counsel stated, "No, your Honor; in the light of what my client has stated on the stand, that she intends to put in some additional toilets and baths, I will concede that point so far as any order of the Court it may make; . . . toilets, baths and the cooking we are willing to proceed and whatever repairs may be necessary on the stairway to make that comply with the State statutes. . . . I will stipulate that an order may be made as to those features." The record then reveals the following:

"THE COURT: That takes care of everything then, except the partitions.

"MR. KEGLEY: Well, there are numerous citations, so to

speak, listed as corrections for the defective plumbing under certain sinks and wash basins.

"THE COURT: That's why I asked, all plumbing?

"MR. BUTCHER: Whatever usual repairs have to be made to make them correct and fit to use, why, she'll do that anyway. . . .

"MR. KEGLEY: Those plumbing citations and corrections are all listed, Mr. Butcher, and that leaves us the one item about the——

"THE COURT: —— partitions.

"MR. KEGLEY: Partitions, and the adequate ventilation.

"MR. BUTCHER: That I will have to leave to the Court's discretion; I have no authority to make a stipulation on that."

In regard to such partitions and ventilation the Court then ordered, "that those partitions in each instance where they are violating the State Housing Act, as contained in the Health and Safety Code, that they be either removed or relocated; and that the ventilation be made such that it comes within the provisions of the State Housing Act as contained in the Health and Safety Code."

The preliminary injunction, dated June 15, 1945, "absolutely enjoined and restrained (the appellant, tenants and occupants) from maintaining and/or continuing to maintain or keeping and maintaining said premises described in said complaint as a public and common nuisance . . . in a manner contrary to the force and effect of the statutes of the State of California, as more particularly described and set forth in the complaint herein, and specifically as follows: . . ." The injunction then orders the defendants to "Discontinue sleeping or cooking in kitchen" of certain described apartments"; repair or remove leaky plumbing and gas pipes in designated apartments; provide additional toilets and baths in separate compartments with required outside window area and reconstruct present combination toilet and bathrooms to comply with law; recondition designated stairways with handrails; "A general clear-up of all toilets and bathrooms"; remove water closet from kitchen; "Provide not less than 12 square feet of window area to the outside" in certain apartments; "provide not less than 500 cubic feet of air space in sleeping rooms" designated. The appellant was ordered to conform to the provisions of the injunction on or before August 20, 1945. On July 2, 1945, appellant's motion to set aside the prelim-

inary injunction was heard, argued and denied, and the present appeal followed.

The State Housing Act, under which the present proceeding was instituted, in section 15024 of the Health and Safety Code, defines a nuisance as follows:

"(a) Any public nuisance known at common law or in equity jurisprudence.

"(b) Whatever is dangerous to human life or is detrimental to health.

"(c) Overcrowding a room with occupants.

"(d) Insufficient ventilation or illumination.

"(e) Inadequate or insanitary sewerage or plumbing facilities.

"(f) Uncleanliness.

"(g) Whatever renders air, food, or drink unwholesome or detrimental to the health of human beings."

Section 15290 of the Health and Safety Code contains the following provision:

"If any building is constructed, altered, converted, or maintained in violation of any provision of, or of any order or notice issued by an enforcement agency pursuant to, this part, or if a nuisance exists in any building or upon the lot on which it is situated, the enforcement agency may institute any appropriate action or proceeding to prevent, restrain, correct, or abate the violation or nuisance."

Section 17821 of the same act provides:

"Any building which has become unfit for human habitation or occupancy, as defined herein, is hereby desclared to be a nuisance. . . ."

It is evident, from a review of the record, that the conclusions reached by the trial court are abundantly supported by the evidence to the effect, in substance, that there were serious violations of the State Housing Act in almost all of the particulars enumerated in section 15024 hereinbefore quoted. For example, the testimony of Dr. Roome, the city health officer, is to the effect that he made an inspection of appellant's premises, as a result of which appellant was served with a notice to abate a nuisance, specifying in detail the alleged defects previously noted herein. Dr. Roome's conclusion, expressed in this notice, was that "All of the buildings . . . are in a generally dilapidated, insanitary and unsafe condition. The buildings in their present condition

constitute a fire hazard and are detrimental to health." A similar conclusion was reached by Buren Thorleifson, state housing inspector, who testified in support of an affidavit previously made. Mr. Thorleifson had inspected appellant's premises in company with the sanitary inspector of Santa Barbara on July 19 and 20, 1944, and "found the entire place to be in a generally filthy, insanitary and unsafe condition, a fire trap and detrimental to public health." A notice to abate the nuisance was sent to and received by the appellant on August 31, 1944. On May 14, 1945, the day before the hearing, Thorleifson again inspected the premises and found the same conditions existing with the one exception that a sign, "Community Kitchen" had been placed over the door of one room which had previously been a combined sleeping and kitchen room. At the hearing on the preliminary injunction a stipulation in court was arrived at in relation to toilets, baths, defective plumbing, etc., as hereinbefore mentioned, which, in the language of the trial court, "takes care of everything then, except the partitions." As to the matter of partitions, which, of course, related to adequate room space and ventilation in connection therewith, appellant's attorney stated, "That I will have to leave to the Court's discretion." Concerning this matter, Mr. Thorleifson testified that he had measured the cubic footage in appellant's sleeping rooms and found it less than the five hundred cubic feet required by Health and Safety Code, section 19300. Thereafter, the trial court did exercise its discretion as suggested by appellant's attorney, and granted the preliminary injunction now complained of, which action seems to have been amply justified under the evidence and stipulations placed before that court.

Appellant's contention that "The Court is without authority to grant a preliminary injunction in this proceeding by expressly compelling the appellant to make alterations and changes upon her premises," cannot be sustained. It is conceded in the appellant's opening brief that "under Section 15290 of the Health and Safety Code and the following sections authority is given for the abatement of nuisances, but the power of the legislature to define and abate nuisances must be restricted by constitutional guaranties. See 20 Cal. Juris. 265." This citation, however, does not support appellant's argument and the article states that "Within reasonable limits, there is no question but that the legislature may declare

certain uses of property to be nuisances.'' This the Legislature has done in section 15024 hereinbefore quoted. Appellant has also cited *Gardner* v. *Stroever*, 81 Cal. 148 [22 P. 483, 6 L.R.A. 90], where the court remarks that ''mandatory preliminary injunctions are seldom granted, and only in a peculiar class of extreme cases.'' The Gardner case did not relate to the Health and Safety Code, was wholly dissimilar to the case at bar, and is not authority in the appellant's favor. Moreover, as mentioned in respondent's brief, ''There has been no attempt to compel Mrs. Morehouse to do any specific particular act other than to cease violating the law in the operation of her premises. She has the alternative right to terminate the occupancy of any portion of the premises and thus cease violating the law, or to make the necessary changes in her apartments to comply with the ventilation requirements and the cubic-footage requirements of the Health and Safety Code.'' In connection with appellant's argument that such a preliminary injunction should only be granted in extreme cases, may be noted the trial judge's statement made at the hearing of a motion to set aside the injunction: ''In the Court's opinion this is an extreme case or the Court would not have signed the injunction in the first place.''

In reference to the above contention, it is further argued that ''Appellant did not have an opportunity to fully present her case,'' and that ''it would be extremely difficult for her to obtain the materials''; that ''these units were filled with old age pensioners and members of the armed forces and their families,'' and that the housing situation would be seriously interfered with by the court's order. The point is also made that appellant had been operating these premises for more than a quarter of a century, and ''during all of that time there never had been an epidemic nor any cause for danger to the public health.'' The record discloses that appellant was given abundant opportunity to present her case and that all of the objections now raised were presented to and considered by the court. No cases are cited in appellant's briefs which would justify a disapproval of the trial court's order, nor are the above arguments persuasive.

■ The appellant's assertion that ''The failure of the Court to make findings as the basis for the order that the violations rendered the premises unfit for human habitation and occupancy or constituted one of the elements defined in

Section 15024 of the Health and Safety Code rendered the order of the court void," is answered by the case of *Pavilion Ice Rink* v. *O'Brien*, 60 Cal.App. 185, 186 [212 P. 632], where the court says: "As no findings are required in a proceeding of this nature [order refusing a preliminary injunction], we must presume in support of the order. . . . Such being the case, this court may not disturb the order of the trial court." ■ Apropos the present situation, the court's further statement is particularly applicable: "The granting or refusing to grant a temporary injunction is a matter which is addressed to the discretion of the trial court (*Kendall* v. *Foulks*, 180 Cal. 171, 174 [179 P. 886]), and the action of the trial court may not be disturbed on appeal except where an abuse of that discretion is shown." No abuse of discretion is apparent in the instant case.

Finally, appellant's opening brief contends that "The Court should have sustained the demurrer to the complaint upon the ground of uncertainty for failure to allege facts constituting a nuisance." *In re Cohn*, 37 Cal.App.2d 39 [98 P.2d 769], cited in support thereof, is not authority for appellant's contention. This court there held that where it was contended that the keeping of peacocks was a nuisance amounting to a misdemeanor, it was necessary to allege facts in support of such contention. In the instant case, not criminal in nature, the complaint was, as respondent's brief submits, "extensive, particular, precise, and contained far more than the minimum requirements of such pleadings." And, if any further facts concerning appellant's premises were desirable, such facts were, as the trial court stated, "particularly within her own knowledge."

■ In the reply brief filed by appellant it is contended that, "In granting an injunction the court must balance the equities and interests of the parties"; that "the rights of the tenants to housing is superior to the interests of the State as to the alleged technical violations of the Housing Act," and that "the trial court did not have jurisdiction to enforce the Housing Act when certificates of occupancy have been issued by the Rent Director authorizing the use of these premises by the tenants during the emergency." In this connection it may be noted that the record supports the implied conclusion of the trial court that the violations charged to appellant were not "technical" but substantial and serious and that dan-

gerous and insanitary conditions cannot be condoned because of the housing situation. The record discloses that due consideration was given these matters by the trial court, and as hereinbefore indicated, no abuse of discretion appears.

The order granting a preliminary injunction is therefore affirmed.

York, J., and White, J., concurred.