[Civ. No. 19471.   Second Dist., Div. Three.   Nov. 3, 1953.]

STATE COMPENSATION INSURANCE FUND et al., Respondents, v. JOHN R. MALONEY, as State Insurance Commissioner, etc., Appellant.

Edmund G. Brown, Attorney General, Walter L. Bowers, Assistant Attorney General, and Harold B. Haas, Deputy Attorney General, for Appellant.

Edward R. Young, John F. O'Hara, McFarland, Laumeister & Ferdon, Donald Gallagher and F. Britton McConnell for Respondents.

VALLÉE, J.—Appeal from an order granting a preliminary injunction enjoining the defendant John R. Maloney, Insurance Commissioner of the State of California, from

enforcing the provisions of an order signed by him on June 19, 1952, identified as Ruling No. 67.

From the verified complaint and the affidavits, viewed most favorably to plaintiffs,[1] it appears that each of the seven plaintiffs is authorized to transact workmen's compensation insurance business in California and in the year 1951 they wrote an aggregate of nearly 50 per cent of the total premiums written in the state.

Under section 11730 et seq. of the Insurance Code, defendant as insurance commissioner is empowered and required to determine and promulgate a classification of risks and minimum premium rates relating to workmen's compensation insurance. The rates approved and issued by defendant are the minimum to be charged by every insurer.

Since 1915, and prior to June 19, 1952, revisions of minimum rates have been mainly initiated and requested by the California Inspection Rating Bureau, a voluntary organization composed of all insurers authorized to write workmen's compensation insurance in California. It was organized for the purpose of collecting and tabulating rating information and statistics for the making of minimum rates. Section 11750 et seq. of the Insurance Code, enacted in 1951, authorizes and regulates workmen's compensation insurance rating organizations. On December 28, 1951, defendant licensed the bureau and designated it as his statistical agent. It has served as such, except in relation to the proposals and order hereinafter referred to. No other rating organization has been authorized or licensed under the provisions of this law.

On July 31, 1950, representatives of seven of the approximately 107 workmen's compensation insurers in California, aggregating only 4.98 per cent of the total premiums written in 1951, submitted to defendant a so-called "rating program." Neither this group nor any of its members are now or were at any time licensed to act as a rating organization. None of the proposals included in the program were collected, tabulated, or approved by the bureau, but on the contrary, it at all times refused to approve such proposals.

In November of 1950, defendant, then Deputy and Chief Assistant Insurance Commissioner, conducted hearings with respect to this proposed program in which plaintiffs participated. On June 18, 1952, one day before the order complained of was signed, there was filed with defendant in said proceed-

---

[1]*Voeltz* v. *Bakery etc. Union,* 40 Cal.2d 382 [254 P.2d 553]; *Globe D. Lunch* v. *Joint Culinary Wkrs.,* 117 Cal.App.2d 190 [255 P.2d 94].

ing an exhibit, numbered 42, by persons or organizations not authorized to make such filing. No copy of Exhibit 42 was served upon or received by any of the plaintiffs. There was no hearing in connection with Exhibit 42, although plaintiffs are informed and believe it materially affects the "rating program."

On June 19, 1952, defendant signed an order identified as Ruling No. 67. Ruling No. 67 amended section 2350 of title 10 of the Administrative Code, as specified in Appendix A attached thereto, and section 2352 of title 10 of the Administrative Code, as specified in Appendix B attached thereto. Appendix A is a mandatory premium discount plan. Appendix B contains three new, optional, alternative, retrospective rating plans designated as Plans A, B, and D.

On June 26, 1952, each plaintiff received through the mail from the office of defendant a mimeographed copy of Ruling No. 67. In the explanations under the heading "Findings and Conclusions" are found the statements that the proposed premium discount plan of Appendix A and the retrospective rating Plan D of Appendix B have been approved subject to modification. Under the title Appendix B there is a note: "Appendix B is not included in this copy of the Commissioner's Decision. . . . Plan D, as approved, may be inspected at the Insurance Commissioner's office in San Francisco and Los Angeles. The plan will be published in the near future by the California Inspection Rating Bureau." On June 25, 1952, the bureau prepared a mimeographed circular letter, which was mailed to all members on June 27th; but it was not received earlier than June 30th and was not received at all by many interested persons, including thousands of agents and brokers. The letter purported to include the entire data which defendant's Ruling No. 67 designated as Appendix B; however, it states: "Tabular Plans in the form of Plan A and Plan B within the framework of Plan D are now in the process of preparation . . . and will be available as soon as possible." On information and belief, plaintiffs allege that scores of agents and brokers have called upon members of defendant's staff requesting information as to the operation of the plans, only to be advised that even insurance department personnel cannot supply the information or explain the plans.

The premium discount plan, Appendix A, provides for the interstate combination of workmen's compensation premiums. The plan distinguishes between buyers of insurance according

to the size of the annual premium and provides a discount based upon the size of the premium. The discounts would be enjoyed only by employers paying more than $1,000 a year. An employer with operations in California and in other states would receive a discount on his California premium, no matter how small, if his combined premium in all states exceeded $1,000. It would be available to fewer than 15,000 of the more than 300,000 California employers carrying workmen's compensation insurance.

The retrospective plans, Appendix B, provide for combination of the insured employers' workmen's compensation experience in California with such experience in other states. Plans A and B are available to employers, on an elective basis, who produce $1,000 or more workmen's compensation annual standard premiums from all eligible states. Plan D is available only to employers paying annual premiums in excess of $5,000 from all eligible states and from all lines of liability insurance. In neither case is there any minimum eligibility respecting California workmen's compensation insurance premiums alone. Final determination of a premium under the plans is determined after the expiration of the insurance, on the basis of paid and estimated loss experience incurred during the insurance period. Plans A and B are "tabular plans" and the tables relating thereto are not calculated or approved and remain unavailable. Plan D embodies a program of extreme complexity and it would take many months before carriers, agents, brokers, and insurance buyers would be able to function under it.

On information and belief, plaintiffs aver: Appendix B is an extensive and voluminous document consisting of approximately 60 pages, containing complicated rules, regulations, statistics, formulae and tables; essential portions have not yet been calculated, and have not been submitted to, nor approved nor issued by, defendant; the appendix will not be available to plaintiffs in sufficient time, or at all, in advance of July 1, 1952, in order for them, their branch offices, employees, agents, and brokers to comply with the order and the requirements of the Insurance Code, particularly sections 381, 383, 12926, and 12928.[2] Section 381 (f) (2) applies to all

---

[2]Section 381 provides: "A policy shall specify: . . . (f) Either: (1) A statement of the premium, or (2) If the insurance is of a character where the exact premium is only determinable upon the termination of the contract, a statement of the basis and rates upon which the final premium is to be determined and paid." Section 383 makes it a mis-

workmen's compensation insurance policies issued in California, in which approximately 350,000 such policies are issued each year. The order affects the basis and rates upon which the final premium is to be determined and paid under such policies.

Plaintiffs allege that the order of defendant is unlawful, invalid, arbitrary, and constitutes an abuse of discretion on his part because:

(a) The plans discriminate against California workmen's compensation insurance carriers and discriminate in favor of a few large insurers operating nationwide. The combination of premiums from other liability lines compounds this discriminatory feature against California insurers writing workmen's compensation insurance exclusively.

(b) The plans would be especially unfair, injurious, prejudicial, and unlawful to the State Compensation Insurance Fund, since it is authorized to write only compensation insurance and only such in California.

(c) The classification of risks and premiums approved by defendant, separately from the "rating proposals," was found by him to be the minimum rates adequate for all workmen's compensation carriers in the state. The superimposition upon minimum adequate rates of advance premium discounts would result in inadequate rates.

(d) The plans are not uniform as to all insurers affected. Section 11732 of the Insurance Code requires that the insurance commissioner shall approve or issue a classification of risks and premium rates. In the past this has been construed as requiring the commissioner to make classifications of the occurrence and severity of injury inherent in the various occupations in which workers are engaged. The order would completely change the meaning by construing it to classify employers (buyers of insurance) solely by the standard of the amount of premiums paid.

(e) The interstate features of the plans result in the unlawful relinquishment by defendant of his power and duty to determine what are minimum adequate rates in California.

(f) The plans violate section 11738 of the Insurance Code by permitting a refund by discount of premium from surplus

demeanor to issue a policy in violation of the requirements of subdivision (f) of section 381. Section 12926 makes it the duty of the insurance commissioner to "require from every insurer a full compliance with all provisions of this code." Section 12928 provides for criminal prosecution of any insurer or any of its agents, officers, or employees violating any penal provision of the code.

which is not "surplus accumulated from premiums on Workmen's Compensation policies issued pursuant to the laws of this State," but from surplus wherever or however earned, within or outside of California.

(g) The proposed plans have as their basis an anticipated graduation of insurance agents' and brokers' commissions and actual graduation of other expense. Defendant is not authorized to regulate the commissions paid by insurers, but by his order he is attempting to force these matters of private contract to be made at rates approved by him.

(h) The order is vague, uncertain, incomplete, and indefinite.

(i) The order and the purported findings of the defendant are not based upon any competent or substantial evidence or any evidence at all.

(j) The early inception date of the plans would bring chaos to the entire compensation insurance industry. Insurance Code, sections 11658 and 11659, prohibit issuance of any policy or endorsement prior to approval thereof by the insurance commissioner. The premium discount plan and the retrospective rating plans require new forms, none of which are in existence, and no time remains in which to prepare them, obtain defendant's approval, obtain printed supplies, and distribute them. A reasonable period of time prior to the inception of a renewal policy, averaging more than 20 days, is necessary in which to prepare such renewal policies and deliver them, and employers are entitled to a reasonable period of time to familiarize themselves with the plans. In previous comparable changes the insurance commissioner has allowed such a reasonable time and seldom if ever less than 30 days following promulgation and publication. In the present instance, defendant signed the order on June 19, 1952, to be effective July 1, 1952, a period of 11 days, which included two week ends. Tens of thousands of workmen's compensation insurance policies expire on July 1, 1952, and immediately thereafter.

Plaintiffs in their prayer sought: (1) a preliminary injunction and upon the trial of the action a permanent injunction, enjoining defendant from enforcing the provisions of the order of June 9, 1952, contained in Ruling No. 67; (2) a declaration of the rights and duties of the parties with respect to the order, including a determination of the validity of the order and the proper construction and enforceability

thereof; and (3) a writ of mandamus commanding defendant to vacate, annul, and set aside the order.

The manager of the State Compensation Insurance Fund stated, by affidavit, that Ruling No. 67 "will make it impossible for the State Compensaiton Insurance Fund to compete with other insurers," and will be in conflict "with long and undisputed administrative conduct by the Industrial Accident Commission as governing body of the Fund."[3]

At the time of the hearing on the order to show cause, no answer nor demurrer had been filed by defendant. Four counteraffidavits were filed by him, which do not in any material or substantial respect deny the facts alleged in the complaint and supporting affidavits. However, defendant in his affidavit states: On June 19, 1952, he simultaneously issued two orders, identified as Ruling No. 67 and Ruling No. 68; included in Ruling No. 68 was a temporary "Emergency Safety Factor," which resulted in 1.6 per cent increase in the rate level for the purpose of providing additional premiums to permit the premium discounts promulgated by Ruling No. 67 to be applied and still leave an adequate rate level; the premium discount portion of Ruling No. 67 and the rate order in Ruling No. 68 each expressly referred to one another and it was intended by him that they should be interdependent one upon the other as constituting interrelated amendments; and the enjoining of Ruling No. 67 while permitting Ruling No. 68 to go into full force and effect does not operate to preserve the status quo on June 30, 1952, pending judicial determination of the propriety and validity of Ruling No. 67. Ruling Nos. 67 and 68 were attached to defendant's affidavit as exhibits.

The proceeding which culminated in Ruling No. 67 was initiated August 4, 1950. Extensive hearings were had. The

[3]The manager of the State Compensation Insurance Fund further stated: "The operation of the plans approved in Ruling 67 will, by their inherent multi-line and inter-state attributes, irrevocably exclude the State Compensation Insurance Fund from competing at all for important segments of the workmen's compensation insurance business in California; will seriously limit the volume, breadth and character of operations which henceforth the Fund may insure in competition with private insurers, and particularly with out-of-state insurers who are licensed to write workmen's compensation insurance in California; will seriously tend to promote an adverse selection of risks against the Fund by narrowing the field in which the Fund can transact business, in contrast to the wider scope of competitive action open to other insurers; and will do literally irreparable harm to the State Compensation Insurance Fund, to its insureds, and to injured workers and dependents of injured workers everywhere in the State, no matter by whom insured."

ruling was issued June 19, 1952. The proceeding which culminated in Ruling No. 68 was initiated April 4, 1952. The ruling was issued June 19, 1952. Separate notices of hearing were given; separate and distinct hearings were held; and separate orders resulted.

On July 10, 1952, the court issued a preliminary injunction. The injunction orders that ''the defendant John R. Maloney, Insurance Commissioner of the State of California, your attorneys, agents, servants and employees be, and they hereby are absolutely restrained and enjoined, during the pendency of the above-entitled action, and until its final determination, or until the Court shall otherwise order, from carrying out or taking any action whatsoever to promulgate, enforce, or administer the provisions of the order signed by defendant, Insurance Commissioner, John R. Maloney, on or about June 19, 1952 contained in the document entitled 'State of California, Department of Insurance, Ruling No. 67, File No. SF 5350—16A.' ''

Nowhere in the complaint—nor, with two exceptions, in any affidavit filed by plaintiffs—is there any mention of Ruling No. 68. The only pleading on file was the complaint in which an injunction was sought with respect to Ruling No. 67. Neither party asked the court for any relief relative to Ruling No. 68. Despite this state of the record, the only point made by defendant is that the court exceeded its jurisdiction and abused its discretion by enjoining the discount provision of Ruling No. 67, while permitting Ruling No. 68 to remain in force. Defendant does not contend that the order is not supported by substantial evidence. He says the trial court, in enjoining the operation of Ruling No. 67 while at the same time permitting Ruling No. 68 to remain in effect, exercised a legislative function· by increasing the level of minimum rates since Ruling No. 68 increased the level 1.6 per cent. He does not deny that the court has jurisdiction to enjoin the enforcement of rates when they are unreasonable, confiscatory, discriminatory, or arbitrarily established. The only issue before the court was whether defendant should be enjoined from promulgating, enforcing, or administering Ruling No. 67. No issue or controversy was tendered relative to Ruling No. 68. Since defendant did not take any appropriate means to request the court to act or frame its injunction with respect to Ruling No. 68, the court had no jurisdiction to take any affirmative action with reference to that ruling.

It is fundamental that a party on appeal cannot successfully complain because the trial court failed to do something which it was not asked to do and which was not before the court. (*Miller* v. *Bay Cities Water Co.*, 157 Cal. 256, 285 [107 P. 115, 27 L.R.A.N.S. 772]; 3 Cal.Jur.2d 604, § 140.) ██ A judgment will not be reversed because of the failure of the trial court to give relief not embraced in the pleadings and which it was not asked to give. (*Buck* v. *Canty*, 162 Cal. 226, 238 [121 P. 924].) Defendant is precluded from complaining that the trial court failed to act with respect to Ruling No. 68.

The court by the preliminary injunction did not fix rates. It left defendant free to perform the functions imposed on him by law with respect to Ruling No. 68. He could after a hearing, on reasonable notice, suspend its operation, amend it, cancel it, or supplement it in any lawful manner so long as he did not seek to enforce Ruling No. 67. The effect of defendant's contention is that he concedes he acted unlawfully in issuing Ruling No. 67, but that the trial court, on its own motion, should have also enjoined the operation of Ruling No. 68 although there was no evidence before the court that he had acted unlawfully in issuing that ruling.

Defendant says that at the hearing below "the Court remarked that if the effect of its injunction upon administration of Ruling No. 67, while leaving No. 68 in effect, would be higher rates, the Commissioner could suspend Ruling No. 68." We agree. Insurance Code, section 11734, reads: "The commissioner may change any such classification or system previously approved or issued if he first holds a hearing to determine the effect of the proposed change upon the adequacy or inadequacy of rates. Such changes shall also be uniform as to all insurers affected." ██ Defendant concedes he was free to act under section 11734, but says that this "would have required a considerable lapse of time." We are unable to perceive any force in this statement. A hearing could have been had in a short time. The statute does not prescribe the time that notice of a hearing should be given—hence, only reasonable notice is required. (*Burden* v. *Stein*, 25 Ala. 455; *People* v. *Frost*, 32 Ill.App. 242; 66 C.J.S. 659, § 18, b. See *Carroll* v. *California Horse Racing Board*, 16 Cal.2d 164, 167 [105 P.2d 110].) If, as defendant contends, the effect of enjoining the operation of Ruling No. 67 while leaving No. 68 in force, was to increase the minimum rate level and such increase would not have resulted if operation

of No. 67 had not been enjoined, then little data, all of which was available, would have been necessary. (See *Hutchinson* v. *Hutchinson Gas Co.*, 125 Kan. 346 [264 P. 68, 72, 57 A.L.R. 137].) In suspending the operation of Ruling No. 68 defendant would be merely adjusting the rate level to meet new conditions—the enjoining of Ruling No. 67.

Furthermore, if, after operation of Ruling No. 67 had been enjoined, defendant felt that No. 68 also should have been enjoined there was no reason why he could not have applied to the trial court for modification of the preliminary injunction in that respect. ■ The preliminary injunction specifically says that it is effective until final determination of the action ''or until the Court shall otherwise order.'' Under these circumstances the trial court has power to modify a preliminary injunction. (*Wheeler* v. *Superior Court,* 82 Cal.App. 202, 208 [255 P. 275]. See *United Railroads* v. *Superior Court,* 170 Cal. 755 [151 P. 129, Ann.Cas. 1916E 199].)

The only issue is whether the trial court abused its discretion in granting the preliminary injunction. ■ In the absence of a general demurrer in return to an order to show cause for a preliminary injunction, the question for decision on the hearing is whether the defendant should or should not be restrained pendente lite from exercising rights claimed by him. (*Trickey* v. *City of Long Beqch,* 101 Cal.App.2d 871, 878 [226 P.2d 694].) ■ The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that pending a trial on the merits the defendant should or should not be restrained from exercising the rights claimed by him. (*Fresno Canal etc. Co.* v. *People's Ditch Co.*, 174 Cal. 441, 447 [163 P. 497] ; *Miller & Lux* v. *Madera Canal etc. Co.,* 155 Cal. 59, 62-63 [99 P. 502, 22 L.R.A.N.S. 391].) ■ The universal rule is that the granting or denial of a preliminary injunction is not a matter of right but rests in the sound discretion of the trial court. (*Brock* v. *Superior Court,* 11 Cal.2d 682, 688 [81 P.2d 931] ; *Lutz* v. *Western Iron & Metal Co.,* 190 Cal. 554, 560 [213 P. 962] ; *London* v. *Marco,* 103 Cal.App.2d 450, 452 [229 P.2d 401] ; 14 Cal.Jur. 180, § 7.) ■ Such discretion will not be disturbed on appeal in the absence of a showing of abuse. (*Piper* v. *Hawley,* 179 Cal. 10, 19 [175 P. 417] ; *Fresno Canal etc. Co.* v. *People's Ditch Co.,* 174 Cal. 441, 447 [163 P. 497] ; *London* v. *Marco,* 103 Cal.App.2d 450, 452 [229 P.2d 401] ; *People*

*ex rel. Dept. Ind. Rel.* v. *Morehouse,* 74 Cal.App.2d 870, 876 [169 P.2d 983] ; 14 Cal.Jur. 182, § 7.)

On the facts stated in the complaint and in the affidavits, it cannot be said that the court abused its discretionary power in ordering a preliminary injunction pending a hearing on the merits. The court was warranted in concluding, on the showing made, that plaintiffs, and particularly the State Compensation Insurance Fund, would suffer great and irreparable injury should operation of Ruling No. 67 not be enjoined pendente lite. The trial court may well have also concluded that an emergency existed in that Ruling No. 67 was incomplete in material respects, was mandatory in its terms, and that plaintiff insurers, insurance agents and brokers, and employers would be in immediate peril of violation of the Insurance Code if operation of the order was not enjoined. The order was signed on June 19, 1952, to be effective July 1, 1952, a period of 11 days, which included two week ends, although the proceeding had been pending nearly two years.

The preliminary injunction is neither ambiguous nor uncertain. Judgments are to have a reasonable intendment. The legal effect governs, rather than the mere language used. A careful reading of the wording of the injunction does not reveal any ambiguity in the language of the court. The obvious meaning, intent, and effect of the language is to restrain defendant from promulgating, enforcing, or administering the provisions of Ruling No. 67. The preliminary injunction suspends the operation of Ruling No. 67, preserving the status quo as it existed prior to the time it was made, until the final determination of the action or until the trial court shall otherwise order.

The appeal is from the order granting the application of plaintiff for a preliminary injunction and from the preliminary injunction.

The order and the preliminary injunction are affirmed.

Wood (Parker), J., concurred.

Shinn, P. J., did not participate.