[Civ. No. 24611.   Second Dist., Div. Two.   Dec. 15, 1960.]

JOHN N. HELMICK et al., Appellants, v. HALLIE H. THOMAS et al., Respondents.

John N. Helmick, in pro. per., Robert E. Austin and Wendell H. Davis for Appellants.

Robert L. Ordin and Aaron L. Lincoff for Respondents.

FOX, P. J.—Plaintiffs brought this action to foreclose as mortgages two deeds given to secure a note. Defendants' cross-complaint sought to quiet their title to the property represented by these deeds. The jury brought in a special verdict finding plaintiff John N. Helmick guilty of fraud, menace and undue influence in obtaining defendants' signa-

tures on the note and deeds, as was alleged in defendants' answer and to cross-complaint.[1] Judgment was thereafter entered against plaintiffs on their complaint and in favor of defendants on their cross-complaint. Plaintiffs[2] have appealed from the judgment.

Plaintiffs contend that the evidence is not sufficient to support the verdict in that neither the threats (to institute criminal proceedings) alleged to have been made nor their efficacy in inducing defendants to sign were adequately demonstrated.

■■ It is clear that an agreement obtained under threat of criminal prosecution is not enforceable in that such threats constitute sufficient menace to obviate the free consent required by section 1565 of the California Civil Code. (*Woodham* v. *Allen*, 130 Cal. 194 [62 P. 398]; *Shasta Water Co.* v. *Croke*, 128 Cal.App.2d 760 [276 P.2d 88].)

It is axiomatic that it is not within the province of an appellate court to retry the facts on appeal. ■■ "[W]hen a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury." (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].) Accordingly, viewing the evidence, as we must, in the light most favorable to the respondents, the record reveals the following:

■■ Defendants Hallie H. Thomas and Carl H. Retzlaff operated a used car business from March, 1952, to February,

---

[1]It was stipulated at the trial that only the issues of fraud, menace, undue influence, and lack of consideration would be submitted to the jury, and that the jury's verdict on these issues would be determinative of the lawsuit.

"THE COURT: And the only question for them, the issue that they will be ultimately called upon to decide is whether or not the defense of fraud and want of consideration has been supported by a preponderance of the evidence.

"MR. ORDIN: We are of one mind, your Honor.

"THE COURT: When they come to that conclusion, then as a matter of law the Court—I think we have agreed—will then give the equitable relief that each side asks, depending on who wins this defense. Once you lose the defense, you fold your tents and go away. The same way if they lose it, they haven't got anything, the note isn't any good and the deeds aren't any good. That is the way I see it.

"Do you agree with me?

"MR. AUSTIN: That's right.

"THE COURT: Very well."

[2]The plaintiffs are husband and wife. Since all the dealings on the part of plaintiffs were carried on by Mr. Helmick we shall use the singular herein as indicating him.

1953, under the name of C & H Motors. Their wives, Evelyn Thomas and Ora May Retzlaff, also defendants herein, did not take part in the business.

Plaintiff John N. Helmick is an attorney, practicing in Los Angeles. Knowing that Helmick had financed the purchase of cars for John Towers, a witness in this case, Thomas approached Helmick in search of similar financing. Helmick wrote his check on April 30, 1952, payable to C & H Motors, for $5,000. It contained the following writing: "This check is given to C & H Motors to be used by them in purchasing cars for the account of the undersigned, to be resold by C & H Motors, the profits and losses to be divided fifty-fifty." On May 17, a similar check for $1,000 was given by Helmick to Thomas, containing the writing: "This check is for purchase of cars as per previous agreement." Plaintiff John N. Helmick testified that the oral understanding of the parties leading up to the writing of the checks was that the money supplied was to be a separate "trust" fund for the purchase and resale of autos by defendants. For their services defendants were to receive 50 per cent of the resulting profits. The "fund" was to be represented at all times by specific autos on the lot and a special bank account, the two of which were to total in value the amount of the "fund." One half of the profits were to be paid plaintiff on the first of each month.

In early December of 1952 a dispute arose concerning the amount of money plaintiff had coming on the sale of an automobile. A meeting was then held on Sunday, December 14, between Helmick, Thomas and Retzlaff. At this meeting it developed that C & H Motors was in financial difficulty. It appears that at this time all or part of plaintiff's investment was gone, and that money had been borrowed on two cars purchased with funds from his investment. A discussion took place at which time Thomas said C & H was financially unable to continue and expressed a desire to liquidate the business. Plaintiff suggested they continue in business so that all parties could get their money out of it. Thomas said he would not continue unless plaintiff got out. Plaintiff agreed to do so if defendants would give him a note and security. Thomas said they would have to have $1,500 to continue in business and plaintiff agreed to advance it in exchange for notes and security including mortgages on their homes. Defendants declined to give mortgages. Thomas asked plaintiff how much he wanted to get out of the business. Plaintiff stated he wanted $12,500. Thomas said Helmick

would be entitled only to $7,500 including an additional $1,500 loan. Thomas testified that plaintiff told them it would be $12,500 or they would go to jail, and that he accused them of stealing. The meeting then broke up and they agreed to meet the next day.

The next day a meeting was held, attended by plaintiff Helmick, defendants Mr. and Mrs. Thomas, and Mr. and Mrs. Retzlaff, and Towers. Again Helmick accused Thomas and Retzlaff of being thieves and of stealing his money. They denied it, claiming the money was lost in a common business venture. Plaintiff presented defendants with a promissory note in the amount of $12,500 (which plaintiff testified was to take into account the $6,000 originally paid in by plaintiff, $3,000 which plaintiff agreed to lend upon the execution of the note, and $5,500 worth of automobiles mortgaged without plaintiff's consent), grant deeds on their homes, and a letter describing the transaction.

On direct examination Thomas testified that he questioned the fact that the documents were "grant" deeds instead of trust deeds, and was told to sign or go to jail. He further testified on cross-examination that when his wife hesitated, she was told ". . . you'll either sign or I'll have your husband in jail in 24 hours." Also on cross-examination, Thomas testified that the other defendants signed only after they were hold they must do so "or he'd have us in jail."

Thus it is clear that there is abundant testimony that threats were actually made.

Appellants also contend, however, that there is insufficient evidence that the threats were the moving cause of the execution of the notes and deeds. But when asked what his response was to plaintiff's threat to jail him if he didn't sign, Thomas testified, "I signed it. I supposed he knew what he was talking about." Further, he testified that his wife signed "promptly" after she was told to do so or her husband would be in jail in 24 hours. It is not so clear what the motivating factor was in connection with the Retzlaffs' signing, but there is testimony that they, too, signed only after being threatened with jail. And the jury's conclusion that they would not otherwise have signed cannot be said to be without substantial support.

Plaintiff argues that the implied findings of the jury are inherently improbable. This contention is without merit. "To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must

exist either a physical impossibility that they are true, or their falsity must be apparent without resort to inferences or deductions." (*People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758].) Clearly such is not the case with respect to defendants' testimony herein.

Plaintiff cites *Stevenson* v. *Stevenson,* 36 Cal.App.2d 494 [97 P.2d 982], which requires that the defense of duress must be established by "clear, cogent and convincing evidence." In that case, defendant alleged that a property settlement agreement was signed by him because he feared physical violence at the hands of his wife's friend. In reversing a judgment for the defendant the court held that the evidence was not sufficient to prove duress. But the opinion points out that there was no evidence, aside from defendant's bare assertion, that he was afraid of his wife's friend. On the contrary, there was strong evidence that he was not. ▆▆▆▆ However, in the case at bar there is far more than defendants' bare assertions on which the jury could rely. As plaintiff points out, there is evidence that his investment was in fact mishandled. This evidence, together with the fact that plaintiff is an attorney experienced in the law lends credence to defendants' testimony that they were in fear of criminal prosecution. Thus, the Stevenson case, *supra,* does not support plaintiff's contention that defendants failed to prove fraud, menace and duress.

▆▆▆ Plaintiff complains that he was not permitted to introduce defendants' answer and cross-complaint in evidence and therefore was deprived of the opportunity to argue to the jury that defendants had made contradictory statements of fact as to the transaction in their verified pleadings and hence their testimony was not reliable. While a statement of fact in a verified pleading may be used for purposes of impeachment under proper procedure (*Gajanich* v. *Gregory,* 116 Cal.App. 622, 629 [3 P.2d 389]) plaintiff here simply offered these pleadings in evidence in their entirety without laying any foundation for the impeachment of any of the defendants. In these circumstances the ruling of the trial court was correct. (Code Civ. Proc., § 2052; *Zanotto* v. *Marogna,* 124 Cal.App.2d 329, 331 [268 P.2d 826].)

▆▆▆ Plaintiff raises other points in connection with estoppel and ratification. Not only were these points not raised at the trial level, but, as stated previously (see f.n. 1), the parties stipulated that only the issues of menace, duress, undue influence and lack of consideration were to be determinative,

both as to the complaint and cross-complaint.[3]    "It is fundamental that a party on appeal cannot successfully complain because the trial court failed to do something which it was not asked to do and which was not before the court." (*State Comp. Ins. Fund* v. *Maloney*, 121 Cal.App.2d 33, 42 [262 P.2d 662]; *Miller* v. *Bay Cities Water Co.*, 157 Cal. 256, 285-286 [107 P. 115, 27 L.R.A. N.S. 772].)    A theory not urged upon the trial court may not be raised for the first time on appeal. (*Niegel* v. *Georgetown Divide Water Co.*, 78 Cal.App.2d 445. 447 [177 P.2d 641]; *Py* v. *Pleitner*, 70 Cal.App.2d 576, 580 [161 P.2d 393].)

Plaintiffs make one last point which merits attention. It was found by the trial court that $3,000 was in fact loaned to defendants in connection with the execution of the note in question and not repaid. In its judgment, the court did three things. It (1) rendered the note and grant deed "void and unenforceable"; and (2) ordered the plaintiffs to deliver the documents to the defendants "for cancellation"; and (3) quieted defendants' title to the property in question. However, the last two segments of the judgment were made conditional upon the payment by defendants to plaintiffs of the $3,000 found owing. Plaintiffs urge that this judgment gives them inadequate assurance of receiving the $3,000. They point out that the last two segments of the judgment are not essential to the defendants in the light of the first segment, rendering the note and deeds void, and therefore the defendants are under no compulsion to repay the $3,000. We believe the plaintiffs are entitled to an unconditional judgment for this amount so that they may use legal process

---

[3] Later in the trial the stipulation as to the issues was reiterated:

"THE COURT: That is correct, and I understood the original stipulation at the beginning of this trial was that depending upon the manner in which the jury decided the defense, the Court would grant the relief asked by the plaintiff or the defendant consistent with their verdict. If they found favorably to yourself on the issue of fraud, duress and want of consideration, then you'd be entitled to the quieting of your title and the other equitable relief that you ask for. That was my understanding of your stipulation and I think the record so reflects it.

"On the other hand, if the jury found that it wasn't obtained by fraud and duress, and that there was consideration, then it was merely a perfunctory granting of the judgment to proceed to foreclose as a mortgage.

"MR. ORDIN: Very well, sir.

"THE COURT: That is the way I understood it. Again, let's have an understanding. Isn't that your understanding?

"MR. AUSTIN: I believe so, your Honor.

"MR. ORDIN: Very well, sir."

402

to collect the same if necessary. The judgment will therefore be modified accordingly.

It is ordered that the following language in the first line of paragraph II of the judgment be stricken: "upon condition that." Also, that the following language at the end of paragraph II(2) of said judgment be stricken: "otherwise defts & cross-complainants to take nothing by reason of their cross-complaint."

As so modified, the judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.