[Civ. No. 15862. First Dist. Div. Two. Nov. 17, 1954.]

THE SHASTA WATER COMPANY (a Corporation), Appellant, v. F. A. CROKE et al., Respondents.

William J. Connolly for Appellant.

Edwin Sprague Pillsbury and David C. Dunlap for Respondents.

NOURSE, P. J.—This is an action for breach of a written contract. The court sitting without a jury gave judgment for defendants and plaintiff appeals.

In the agreement of July 6, 1951, incorporated by reference in the complaint, plaintiff released all claims against defendants, their former employees, for shortages on inventories and operations occurred during their employment and for shortages occurred on a bottling contract between plaintiff and Ginger Beer Bottlers, Ltd., in consideration of $20,000 to be paid by defendants—$5,000 cash and $15,000 in installments to be secured by certain trust deed; in addition defendants agreed to pay $25 in settlement of miscellaneous bottles and to return an accumulating table. It was alleged that the agreement was breached by defendants by failure and refusal to fulfill any of these obligations except the return of the table. Defendants denied having caused shortages, admitted the signing of the agreement, but alleged that it was obtained through fraud, duress and intimidation, among which were threats of criminal prosecution, that it lacked consideration and that defendants had notified plaintiff of their rescission.

At the end of the trial the court orally expressed its opinion that the defense of duress had not been made out by a preponderance of the evidence and that the only issue left was that of consideration. However, later the court found not only that there was no consideration for the purported agreement but also that said purported agreement was obtained from the defendants under threats of criminal prosecution, menace and duress. A motion for a new trial, made on most of the grounds specified in section 657, Code of Civil Procedure, but argued mainly on the ground of irregularities preventing a fair trial, was denied.

Appellant urges that as a matter of law and of fact the agreement was supported by consideration and that the finding as to threats of criminal prosecution, menace and duress was contrary to the evidence and due to sympathy and prejudice of the judge shown by the irregularity of the proceedings.

That there was substantial evidence of threats of criminal prosecution and of menace in general cannot be denied. As to the background, it is undisputed that the defendants Croke and Wendell had been employed at the Los Angeles office of plaintiff which had been a losing operation for several years. Defendant Croke took his position with plaintiff in 1949 only and was then manager of the Los Angeles branch.

Defendant Wendell had much longer service, among other positions as bookkeeper. Croke left his position with plaintiff in the latter part of 1950 and prepared to open a business of his own in San Bernardino. A few months after he left plaintiff's employment the Los Angeles plant was closed, and Mr. Wendell also left and joined Croke. In June, 1951, Mr. Gordon, the Los Angeles distributor of Ginger Beer Bottlers, Ltd., for whom plaintiff had rendered contract bottling services at the Los Angeles plant, complained of large shortages of crowns for ginger beer bottles provided by them to plaintiff, which, if they had been used in bottling would have shown that bottled products amounting to a value of some $30,000 had not been accounted for. Mr. Croke, informed of this claim, conceded that a minor part of the shortage of crowns was attributable to the fact that from the essence provided by Ginger Beer Bottlers, Ltd., more ginger beer had been produced than in accordance with the formula and that from this "overrun" he had twice taken a small quantity (value a few hundred dollars) for his own account whereas larger quantities had gone into the stock of plaintiff. However, he accepted responsibility in making an arrangement with Mr. Gordon whereby he agreed to pay $10,000 against a release of both himself and plaintiff from all responsibility for the shortage claim. (Mr. Croke testified that before he made said arrangement he had been told by Mr. Kennedy, the then San Francisco manager of plaintiff, that otherwise the matter would be turned over to the authorities and the bonding company, but the validity of the said agreement with Gordon is not in issue and Mr. Croke fully complied with it.)

With respect to the agreement in issue, Croke testified in substance that when Kennedy had received the release from Gordon he told defendants: "Now I can put you two bastards behind the eight-ball." In a later conference in San Francisco he charged them with the loss of truckloads of merchandise and machinery without any specification. When Croke denied responsibility he threatened criminal prosecution and reference to the bonding company. When Croke wanted to telephone counsel he threatened with the cops. The conference continued a whole day, Kennedy telling them that they would not get out of town before they had signed an agreement. There were repeatedly threats of the above kind and Kennedy also asked them how they would like to have the publicity about their being arrested in San Francisco in all

the papers in San Bernardino. They were scared, afraid they would not get back home as they had nobody in San Francisco who could bail them out. Under such pressure they signed after dinner the alleged agreement after first much higher amounts had been demanded from them. Mr. Wendell corroborated the above evidence of Croke; Kennedy denied all threats and other witnesses for plaintiff testified that in their presence no threats had been uttered, but they had not been present during all of the conference.

The opinion of the trial judge, made part of the transcript, shows that she considered a strong corroboration of the unfree character of defendants' consent the fact that plaintiff did not offer any evidence of actual shortages of any importance at the Los Angeles plant except those with respect to the ginger beer bottling in which plaintiff, now that the claim of Ginger Beer Bottlers, Ltd., had been released, could be only interested for bottling charges and such amounting according to the calculations of the court to at most $3,500. The court explained the fact that she nevertheless had stated orally that she found the allegations of duress and menace not to be true, by her erroneous opinion at that time that duress and menace required physical restraint or threat of physical restraint which she did not consider proved, although she did not doubt that the signing of the alleged contract had taken place under the influence of other threats. ■ The study of cases submitted by the attorney of defendants, to wit, *Morrill* v. *Nightingale,* 93 Cal. 452 [28 P. 1068, 27 Am.St. Rep. 207]; *People* v. *Beggs,* 178 Cal. 79 [172 P. 152]; *Slocum* v. *Nelson,* 72 Cal.App.2d 33 [163 P.2d 888]; *Woodham* v. *Allen,* 130 Cal. 194 [62 P. 398], had convinced her that an agreement obtained under threat of criminal prosecution or other injury to the character of a person, such as publication of the alleged wrongs, was void also in the absence of physical restraint. There is no doubt that the latter position taken by the court is the correct one. The cases cited show that an agreement obtained through threat of criminal prosecution is void, even if the amount agreed to be paid was due, because the use of criminal prosecution as a means of collecting a debt is against public policy; such threats, like all threats of injury to the character of the party, constitute menace destructive of free consent. (Civ. Code, §§ 1567-1570.)

■ The court's prior oral statement was not a finding in the technical meaning of the word, as findings must be in writing. (Code Civ. Proc., § 632.) ■ Such prior oral

statements as to its evaluation of the evidence do not restrict the court's power to make contrary formal findings. (*Scholle* v. *Finnell*, 173 Cal. 372, 376 [159 P. 1179] ; *Putman* v. *Superior Court*, 209 Cal. 223, 227 [286 P. 425] ; *Huth* v. *Katz*, 30 Cal.2d 605, 609 [184 P.2d 521].) ██ The finding that the alleged agreement was obtained under threats of criminal prosecution and menace is binding on this court as based on substantial though conflicting evidence; in itself it fully supports the conclusion that the agreement is invalid and unenforceable and that conclusion fully supports the judgment for defendants. ██ It then is irrelevant whether the further findings of duress and lack of consideration, which can be considered surplusage, are supported in fact and in law or not. (*Townsend* v. *Allen*, 114 Cal.App.2d 291, 300 [250 P.2d 292] ; *Sands* v. *Eagle Oil & Ref. Co.*, 83 Cal.App.2d 312, 321 [188 P.2d 782] and cases there cited.)

The question remains whether such bias or prejudice of the trial judge causing irregularities was shown as prevented plaintiff from having a fair trial so that a new trial should have been granted. ██ As are all grounds for new trial, the question whether irregularities have prevented a fair trial is mainly addressed to the discretion of the trial court. (20 Cal.Jur. 44; *Head* v. *Logan*, 39 Cal.App.2d 243, 246 [102 P.2d 813].) ██ If the moving party is convinced that the trial court cannot objectively consider the necessity of a new trial because its own prejudice has impaired the fairness of the trial, it can move to disqualify the court from hearing the motion for new trial. (*Matthias* v. *DeLucchi*, 21 Cal.App.2d 718 [69 P.2d 1005].) Appellant did not do so. Neither did appellant at any time, prior to the motion for new trial, object to any of the matter now charged as showing bias or prejudice. These circumstances tend to undermine the appellant's case as against the rejection of its motion by the trial court. ██ We have, nevertheless, carefully studied the whole transcript for any indication of bias or prejudice, paying special attention to the matters stressed by appellant. We have not found the slightest ground for complaint; to the contrary from the transcript appears an assiduous endeavor of the court to find the truth and to reach a just result. It is true that the judge in the course of the trial sometimes expressed her thoughts, doubts and feelings more freely than would have been desirable in a jury case. But such expressions were more often directed against the respondents than to their advantage. Although the court

sometimes showed pity for the plight of the defendants, the questions directed against them make it quite clear that as to the facts of the case the court maintained a complete objectivity. There is not the least ground to doubt the good reason given by the court for her change of opinion and to ascribe it to bias. Neither do we find anything objectionable in the court's advice to settle the matter for $3,500— the maximum damage she considered proved. Such a compromise would have been a more desirable solution than the judgment necessitated by appellant's decision to stand on the written contract. The court's endeavor to bring it about seems commendable and in no way opposed to judicial standards. No further stating of details seems necessary.

Judgment affirmed.

Dooling, J., and Kaufman, J., concurred.

A petition for a rehearing was denied December 17, 1954.