[No. D014430. Fourth Dist., Div. One. Apr. 23, 1993.]

BAYSCENE RESIDENT NEGOTIATORS, Plaintiff and Appellant, v.
BAYSCENE MOBILEHOME PARK et al., Defendants and Respondents.

**COUNSEL**

Stanley F. Zubel for Plaintiff and Appellant.

Swanson & Dowdall, Terry R. Dowdall and Kathryn L. Brunner for Defendants and Respondents.

Ronald A. Zumbrun, Anthony T. Caso and Victor J. Wolski as Amici Curiae, upon the request of the Court of Appeal, on behalf of Defendants and Respondents.

## OPINION

**HUFFMAN, J.**—Bayscene Resident Negotiators (Negotiators) appeals from an order dismissing its petition to correct and confirm an arbitration award against the Bayscene Mobilehome Park (the Park) and its owners (collectively, the owners). The court dismissed the petition, finding a provision of the city ordinance mandating binding arbitration of mobilehome rent disputes unconstitutional. The court specifically found the provision unconstitutional because it deprived the parties of their rights to litigate rent control-related issues in a court of law. We agree with the court that the ordinance violates due process. Accordingly, we affirm.

### BACKGROUND

In June 1987 Elena Maldonado-Hanson (Maldonado-Hanson) and Hal R. Heywood (Heywood) purchased the Park. On or about July 15, 1987, they notified the tenants of a rent increase.

The tenants and the owners entered into negotiation pursuant to the Chula Vista Municipal Code as enacted in 1982 by Ordinance No. 1997 and amended in 1986 by Ordinance No. 2163. Ordinance No. 1997 added a new chapter 9.50 to the Chula Vista Municipal Code entitled "MOBILEHOME PARK SPACE RENT MEDIATION." The new chapter provided for nonbinding negotiation and mediation of disputes arising from proposed rent increases. (Chula Vista Mun. Code, §§ 9.50.070, 9.50.080, as then in effect.) In the event the dispute was not resolved by the negotiation and mediation process, both parties retained all legal rights under the law. (Chula Vista Mun. Code, § 9.50.080, subd. 9, as then in effect.)

Negotiations failed and the parties entered into mediation. According to Maldonado-Hanson, the mediators recommended that the tenants accept the 1987 rent increase on the condition there be no increase in 1988, followed by a 1989 increase not to exceed the consumer price index. Maldonado-Hanson contends the resident leaders rejected the mediators' proposal. According to

the findings of the arbitrator, mediation was still pending when on August 23, 1988, the Chula Vista City Council amended chapter 9.50 by Ordinance No. 2282. Ordinance No. 2282, which was effective September 23, 1988, substituted negotiation and binding arbitration in lieu of the previously mandated negotiation and mediation. (Chula Vista Mun. Code, §§ 9.50.010, 9.50.040-9.50.085.) The ordinance referred to a dispute involving one park where pending mediation had not been resolved and specifically subjected that dispute to binding arbitration under the amended provisions. Bayscene Mobilehome Park was the park subjected to binding arbitration.

On January 16, 1989, Douglas H. Hanson (Hanson) signed a document entitled "Agreement to Submit Bayscene Rental Dispute to Binding Arbitration" (Agreement to Arbitrate) purportedly on behalf of Maldonado-Hanson and Heywood. For several years prior to Maldonado-Hanson and Heywood's purchase of the park, Hanson was co-operator of the Park with Maldonado-Hanson. Additionally, Hanson had been one of the negotiators designated to represent the Park in the earlier negotiations. Hanson purportedly signed the Agreement to Arbitrate under threat of criminal prosecution by the Chula Vista City Attorney.

On February 3, 1989, Maldonado-Hanson and Heywood sold the Park to Richard and Karen Hall.

In March 1990 arbitration proceedings were conducted under the auspices of the American Arbitration Association. Maldonado-Hanson, Heywood, both Halls and Hanson (the owner-participants) participated in the proceedings along with Negotiators. On multiple occasions both before and during the proceedings the owner-participants objected to the proceedings on multiple grounds, including the constitutionality of Ordinance No. 2282's binding arbitration provision. Testimony both oral and documentary was received into evidence. The parties declined to have the proceedings reported at their own expense.

The arbitrator dismissed the case as to Hanson. With respect to the Halls the arbitrator stated, "The case is dismissed as to Respondents RICHARD A. HALL and KAREN HALL without prejudice with respect to any claims arising between the Respondents HANSON-HEYWOOD and Respondents HALL in connection with the sales agreement of BAYSCENE MOBILEHOME PARK between the respective Respondents." The arbitrator found in Negotiators' favor and awarded recovery in excess of $40,000. The award was made against the Park, Maldonado-Hanson and Heywood.

Negotiators petitioned the superior court to confirm the arbitration award. In addition Negotiators sought to have the award "corrected" to identify the

Halls as liable for the award. At the hearing on the petition the court found the Halls had been dismissed from arbitration. The court dismissed the petition in its entirety upon its finding section 9.50.085 of Chula Vista City Ordinance No. 2282 was unconstitutional.

Negotiators appealed from the court's order dismissing the petition. After briefing was completed by the parties, this court requested the City of Chula Vista (the City) and the Pacific Legal Foundation (the Foundation) to submit amicus curiae briefs on whether a city has authority to enact an ordinance compelling binding arbitration in the manner set forth in Ordinance No. 2282. The City declined to submit a brief, but the Foundation complied. The parties were provided with an opportunity to respond to the Foundation's brief, but declined to do so.

DISCUSSION

I

Before reaching the primary issue on the constitutionality of the binding arbitration requirement of Ordinance No. 2282, we address three preliminary issues: 1) Negotiators' continued attempt to bind the Halls by the arbitrator's award, 2) Negotiators' claim constitutionality of the ordinance is irrelevant because the arbitration proceeded pursuant to a submission agreement, and 3) Negotiators' claim the owner-participants waived their right to attack the arbitration process on any grounds by having participated in the proceedings.

*Halls' Status*

In the petition to confirm and correct the award Negotiators contended the award was incomplete in that the Halls were not named as being jointly and severally responsible for the award. Negotiators contended it was clear the arbitrator had intended to include the Halls and sought to have the order "corrected" to identify them as liable for the award. At the hearing the court initially addressed the "correction" issue as follows:

"THE COURT: Let me get clear one thing. First of all, the Halls were clearly dismissed from the action and you can't add them in and the arbitrator couldn't make [an] award as to them; Right?

"[Negotiators' Counsel]: Admittedly the language is ambiguous.

"THE COURT: I don't care if [it's] ambiguous or not, they were dismissed from the action."

Negotiators' counsel then argued he did not believe they were dismissed as to the whole action, but rather only as to those matters between the Halls as purchasers and Maldonado-Hanson and Heywood as sellers. At the close of the hearing when the court found the ordinance unconstitutional, the court again reiterated the Halls were dismissed. The order prepared by counsel did not specifically address the court's finding as to the Halls' dismissal. It is clear from the reporter's transcript however that the court did not grant Negotiators' request to add the Halls to the award, but rather found they had been dismissed from the arbitration.

Negotiators ignores the court's finding as to the Halls' dismissal and instead presents argument as to why the Halls should be bound by the arbitration award. Not having challenged them, Negotiators is bound by the court's findings.

Additionally the findings are supported by substantial evidence. The dismissal paragraph in the arbitration award is ambiguous and could be interpreted to dismiss only those claims arising out of the sale of the Park or to dismiss all claims without prejudice to future actions between the Halls and Maldonado-Hanson and Heywood as to claims arising out of the sale. However, there is considerable evidence within the award indicating the arbitrator's omission of the Halls from liability was intentional. The arbitrator specifically included the Halls when he intended they should bear responsibility as for attorney fees, costs, and administrative fees and expenses. The arbitrator provided Maldonado-Hanson and Heywood alone with an opportunity to approve Negotiators' computation of the amounts due each tenant for incorporation in a final award. Additionally, the award covered the rental period between October 1987 and February 1989. In supplemental findings the arbitrator explained the award covered that period because it was based on the Agreement to Arbitrate by which the Halls refused to be bound and resisted in all respects.

The court's findings the Halls were dismissed from the arbitration will not be disturbed on appeal.

*Consent Issue*

The arbitrator in making his findings and award stated he was proceeding in accordance with the Agreement to Arbitrate. ▆▆▆ Negotiators takes the position the constitutionality of Ordinance No. 2282 is irrelevant because the arbitration proceeded pursuant to "a valid enforceable contract to submit

the rent increase dispute to binding arbitration." Negotiators argues the court therefore erred when it "dismissed" Maldonado-Hanson and Heywood[1] based upon the alleged unconstitutionality of the ordinance without giving separate consideration to the legal effect of the submission agreement.

We disagree with Negotiators' claim the court did not consider whether there was a valid "submission agreement."[2] It is clear from the reporter's transcript that the court was aware that if Maldonado-Hanson and Heywood consented to arbitration they could have waived the constitutionality issue. The court specifically asked Negotiators' counsel what evidence he had to demonstrate consent to the arbitration. Counsel responded the "Chula Vista City Ordinance" implied consent and proceeded to address the constitutionality issue. Counsel did not argue that the Agreement to Arbitrate constituted consent as it does now. Having failed to raise the Agreement to Arbitrate when asked, Negotiators can hardly complain that the court did not specifically address the effectiveness of any agreement when it impliedly found there was no consent to arbitration. As discussed below, we conclude the court correctly determined there was no consent to arbitrate.

At the arbitration hearing Hanson testified he signed the Agreement to Arbitrate because the Chula Vista City Attorney threatened criminal prosecution for violating the newly enacted ordinance if he refused to proceed with arbitration. Hanson further testified he would not have signed the agreement absent the threats of prosecution. Hanson's testimony was uncontradicted. In the superior court and upon this appeal Negotiators does not dispute the truth of Hanson's testimony. Rather, it argues the arbitrator made specific findings with respect to the Agreement to Arbitrate and obviously concluded upon its sufficiency.

Initially we note that the arbitrator did not make findings with respect to whether Hanson signed the Agreement to Arbitrate under threat of prosecution or, if he did so, the impact upon the sufficiency of the purported agreement. The arbitrator did however issue an award purportedly based on the Agreement to Arbitrate. Negotiators' position therefore raises two related questions: 1.) Is an agreement to arbitrate obtained by threat of prosecution valid and enforceable and 2.) who determines whether the agreement is enforceable, the arbitrator or the court?

___

[1]Negotiators argues separately that the Halls are bound by the submission agreement. As discussed previously, the arbitrator dismissed the Halls. Any discussion of their "consent" to arbitration is therefore irrelevant.

[2]We note that while Negotiators now argues the primacy of the submission agreement, below it argued "the submission agreement was not required and is merely supplemental to the primary underlying mandate to arbitrate, which is the Chula Vista Ordinance No. 2282."

A written agreement to submit to arbitration is valid except upon such grounds as exist for the revocation of any contract. (Code Civ. Proc., § 1281.) To form an enforceable contract the parties' consent must be free. (Civ. Code, § 1565.) Apparent consent is not free when obtained, inter alia, through duress, menace, or fraud. (Civ. Code, § 1567.) ■ California law is clear that an agreement obtained by threat of criminal prosecution constitutes menace and is unenforceable as against public policy. (See *Tiffany & Co.* v. *Spreckels* (1927) 202 Cal. 778, 784 [262 P. 742] [contract obtained by threats of prosecution illegal and voidable]; *Helmick* v. *Thomas* (1960) 187 Cal.App.2d 395, 397 [9 Cal.Rptr. 512] [threat of criminal prosecution constitutes sufficient menace to obviate free consent rendering agreement unenforceable]; *Shasta Water Co.* v. *Croke* (1954) 128 Cal.App.2d 760, 764 [276 P.2d 88] [threat of criminal prosecution constitutes menace destructive of free consent and renders agreement void].) ■ It is clear that consent to arbitrate obtained by threat of prosecution is invalid and any agreement obtained thereby is unenforceable as against public policy.

The parties have not cited, nor have we located, any cases directly addressing whether the arbitrator or the court determines the enforceability of an agreement to arbitrate procured through threat of prosecution. ■ Resolution of disputes by arbitration however is strongly favored in this state and "doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration." (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street* (1983) 35 Cal.3d 312, 322, 323 [197 Cal.Rptr. 581, 673 P.2d 251] [*Ericksen*].) Judicial review of arbitration awards has been extremely limited but courts have historically determined whether the parties agreed to arbitrate. (*O'Malley* v. *Wilshire Oil Co.* (1963) 59 Cal.2d 482, 491 [30 Cal.Rptr. 452, 381 P.2d 188]; *Santa Clara-San Benito etc. Elec. Contractors' Assn.* v. *Local Union No. 332* (1974) 40 Cal.App.3d 431, 437 [114 Cal.Rptr. 909].)

Courts have addressed the question of who determines the enforceability of an arbitration agreement in analogous situations, i.e., illegal contracts and fraud in the inducement.

■ Where a question of the illegality of the entire contract or transaction giving rise to the arbitration agreement is raised, the court and not the arbitrator decides the enforceability of the arbitration agreement. (*Loving & Evans* v. *Blick* (1949) 33 Cal.2d 603, 609-614 [204 P.2d 23]; *All Points Traders, Inc.* v. *Barrington Associates* (1989) 211 Cal.App.3d 723, 736-737 [259 Cal.Rptr. 780]; *Bianco* v. *Superior Court* (1968) 265 Cal.App.2d 126,

129 [71 Cal.Rptr. 322].) This is so because "[a] party seeking confirmation cannot be permitted to rely upon the arbitrator's conclusion of legality for the reason that paramount considerations of public policy require that this vital issue be committed to the court's determination whenever judicial aid is sought." (*Loving & Evans* v. *Blick, supra,* 33 Cal.2d at p. 614.) However, where the claim of illegality does not directly implicate the arbitration agreement and affects only a portion of the underlying contract, the arbitrator's determination as to illegality is binding and not subject to court review. (*Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 31-32 [10 Cal.Rptr.2d 183, 832 P.2d 899].)

Several courts have dealt with claims that either the underlying contract or the arbitration clause was vitiated by fraud in the inducement and whether such issues are determined by the arbitrator or the court. Generally, "claims of fraud in the inducement of the contract (as distinguished from claims of fraud directed at the arbitration clause itself) will be deemed subject to arbitration."[3] (*Ericksen, supra,* 35 Cal.3d at p. 323, fn. omitted.) However, where it is alleged the fraud either induced the arbitration clause itself or permeated the entire agreement including the arbitration clause, the issue has been reserved for judicial determination. (*Ford* v. *Shearson Lehman American Express, Inc.* (1986) 180 Cal.App.3d 1011, 1023 [225 Cal.Rptr. 895]; *Main* v. *Merrill, Lynch, Pierce, Fenner & Smith, Inc.* (1977) 67 Cal.App.3d 19, 27 [136 Cal.Rptr. 378].) Claims a party never voluntarily agreed to arbitrate because they were dominated by the other party or that the true nature of the document was concealed have also been reserved for judicial determination. (*Strotz* v. *Dean Witter Reynolds, Inc.* (1990) 223 Cal.App.3d 208, 217-219 [272 Cal.Rptr. 680]; *Ford* v. *Shearson Lehman American Express, Inc., supra,* 180 Cal.App.3d at pp. 1025-1027.)

The cases requiring judicial determinations involve certain overriding and recurring issues such as fiduciary relationships, undue pressure or influence depriving a party of his or her free choice and strong public policy considerations against enforcement of the arbitration agreement. ▮ Here, it is uncontroverted that the Agreement to Arbitrate was obtained under threat of criminal prosecution and that Hanson would not have signed the agreement absent such threat. The threat was particularly abhorrent in that it was issued

---

[3]Two Court of Appeal cases have arguably found a claim of fraud in the inducement of the arbitration clause itself may properly be determined by the arbitrator. The cases however appear to involve no more than situations in which "experienced, knowledgeable parties signed a contract under the mistaken belief that it merely repeated the terms to which they had earlier agreed." (*King* v. *Prudential-Bache Securities, Inc.* (1990) 226 Cal.App.3d 749, 756 [277 Cal.Rptr. 214]; *Herman Feil, Inc.* v. *Design Center of Los Angeles* (1988) 204 Cal.App.3d 1406, 1416-1417 [251 Cal.Rptr. 895].)

by a government agent. The city attorney's threats constituted menace destructive of free consent. It hardly bears stating that the use of such threats to force individuals to give up their legal rights and to agree to binding arbitration implicates strong public policy considerations. (See *Balling* v. *Finch* (1962) 203 Cal.App.2d 413, 420 [21 Cal.Rptr. 490]; *Shasta Water Co.* v. *Croke, supra,* 128 Cal.App.2d at p. 764.) The issue of consent was one for judicial determination. The court did not err in impliedly finding no consent.

*Waiver Issue*

■ Negotiators takes the position the owner-participants could only attack the constitutionality of the arbitration requirement by refusing to arbitrate and forcing Negotiators to file a petition to compel arbitration under Code of Civil Procedure[4] section 1281.2. Negotiators contends that, having "voluntarily" proceeded with arbitration, the owner-participants are now limited to the grounds for vacating the award set forth in section 1286.2. Normally, we would agree with Negotiators that a party who questions the validity of the arbitration agreement may not proceed with arbitration and preserve the issue for later consideration by the court after being unsuccessful in the arbitration. (See *Moncharsh* v. *Heily & Blase, supra,* 3 Cal.4th at pp. 29-31.)

Negotiators' position fails in this instance however because the owners' participation was anything but "voluntary." This is not a situation in which two parties to a private agreement are disputing the agreement's application. Rather, the owners were faced with a city ordinance requiring them to participate in binding arbitration and threats of criminal prosecution should they refuse to do so. To require the owners to refuse to proceed with arbitration, potentially violating a city ordinance and facing criminal conviction, in order to preserve their right to challenge the ordinance's constitutionality stretches the bounds of reason. The fact they may later vindicate their position with a favorable court ruling on constitutionality will do little to assuage the damage they may have suffered as a result of wrongful criminal prosecution.

The owners objected to the arbitration proceedings repeatedly, continually raising the constitutional challenge both before and during proceedings. The court correctly found there was no waiver.

## II

■ We turn now to the question whether the court erred in finding the ordinance's requirement of binding arbitration unconstitutional. Because we

---

[4]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

find the provision to be an unconstitutional deprivation of due process, we do not reach the numerous other constitutional infirmities urged by the owners.

The Fourteenth Amendment to the United States Constitution and article I, section 7, subdivision (a), of the California Constitution guarantee a person will not be deprived of property without due process of law. ■ Both federal and state courts have recognized that access to the courts by persons forced to settle their claims through the judicial process is a fundamental right not to be denied absent a countervailing state interest of overriding significance. (See *Boddie* v. *Connecticut* (1971) 401 U.S. 371, 376-377 [28 L.Ed.2d 113, 117-118, 91 S.Ct. 780] [access to courts for indigents seeking divorce]; *Payne* v. *Superior Court* (1976) 17 Cal.3d 908, 914 [132 Cal.Rptr. 405, 553 P.2d 565] [access for indigent prisoners sued civilly]. See also *Lum* v. *Mission Inn Foundation, Inc.* (1986) 180 Cal.App.3d 967, 971-972 [226 Cal.Rptr. 22].)

At least two California Court of Appeal decisions have addressed the question of compulsory arbitration and access to the courts. In the first case, *Hebert* v. *Harn* (1982) 133 Cal.App.3d 465 [184 Cal.Rptr. 83], an arbitrator issued an award in favor of the plaintiff after the defendant had failed to participate in mandated judicial arbitration pursuant to section 1141.10 et seq. The trial court denied the defendant's request for a trial de novo on the basis of a local rule which required a party who had not participated in the arbitration to show good cause for its nonparticipation before it could obtain a trial de novo. This court reversed and invalidated the local rule because the governing statutes did not authorize a denial of trial de novo if timely requested. (*Hebert, supra,* at pp. 469-470; but see *Genovia* v. *Cassidy* (1983) 145 Cal.App.3d 452, 459 [193 Cal.Rptr. 454].) In explaining its ruling the court stated:

"In enacting judicial arbitration as an alternative to the traditional method of dispute resolution, the Legislature, aware of the constitutional mandate of the right to jury trial, unconditionally provided any party could so elect upon making a request within 20 days of the award. (See [Code Civ. Proc.,] § 1141.20.) The Legislature recognized that a trial de novo following an arbitration could 'not be burdened by the imposition of onerous conditions, restrictions or regulations which would make the right practically unavailable.' [Citation.] Where a local rule has the effect of closing the courts to the defaulting party making the decision of the arbitrator the final determination in the case, the party is denied due process of law. [Citations.]" (*Hebert* v. *Harn, supra,* 133 Cal.App.3d at p. 469.)

The second case, *Healy* v. *Onstott* (1987) 192 Cal.App.3d 612 [237 Cal.Rptr. 540], involved Civil Code section 845 which provides for compulsory arbitration of the apportionment of maintenance costs between co-owners of a right-of-way. If all the co-owners do not accept the arbitration award, the section further provides for court determination of the proportionate liability of the owners. (*Healy, supra,* at p. 614.) Upon a petition to confirm an arbitration award, the trial court denied a co-owner's request for trial and instead employed the confirmation procedure for voluntary arbitration set forth at section 1285 et seq. The Court of Appeal reversed based on the denial of a trial de novo. (*Healy, supra,* at p. 615.)

The court found that to construe Civil Code section 845 to incorporate the confirmation procedure of section 1285 et seq., giving near conclusive weight to the arbitrator's decision, "involuntarily deprive[d] an affected party of his constitutional right to trial." (*Healy* v. *Onstott, supra,* 192 Cal.App.3d at pp. 615-616.) In order to preserve the constitutionality of the statute, the court therefore construed section 845 to afford a right to a trial de novo should less than all the co-owners accept the arbitrator's award. (*Healy, supra,* at p. 616.)

The California cases are consistent with federal law and law from other states. The United States Supreme Court, in a trilogy of cases in the 1920's, addressed the validity of a Kansas industrial relations act requiring compulsory arbitration of certain industrial disputes. (*Chas. Wolff Packing Co.* v. *Court of Industrial Relations* (1923) 262 U.S. 522 [67 L.Ed. 1103, 43 S.Ct. 630, 27 A.L.R. 1280] (*Wolff I*); *Dorchy* v. *State of Kansas* (1924) 264 U.S. 286 [68 L.Ed. 686, 44 S.Ct. 323]; *Chas. Wolff Packing Co.* v. *Court of Industrial Relations* (1925) 267 U.S. 552 [69 L.Ed. 785, 45 S.Ct. 441] (*Wolff II*).) The court found the act's scheme of compulsory arbitration deprived business owners of their property and liberty of contract without due process of law in violation of the Fourteenth Amendment. (*Wolff I* at p. 544 [67 L.Ed. at p. 1112] [as the act applied to fixing wages]; *Wolff II* at pp. 560, 569 [69 L.Ed.2d at pp. 787-788, 791-792] [as the act applied to fixing hours of labor].) In *Nebbia* v. *People of State of New York* (1934) 291 U.S. 502 [78 L.Ed. 940, 54 S.Ct. 505, 89 A.L.R. 1469], the court later held price control regulations were unconstitutional "only if arbitrary, discriminatory, or demonstratively irrelevant." (*Id.* at p. 539 [78 L.Ed. at p. 958].) The court has upheld compulsory binding arbitration schemes against due process challenge where the legislative choice is not unreasonable or arbitrary and the procedure adopted satisfies constitutional requirements of notice and an opportunity to be heard. (*Hardware Dealers Mut. Fire Ins. Co.* v. *Glidden Co.* (1931) 284 U.S. 151, 158 [76 L.Ed. 214, 219, 52 S.Ct. 69] [fire insurance

policies required to provide for compulsory binding arbitration of the amount of loss].)

Compulsory, binding arbitration still remains limited in large measure to situations in which the parties have agreed to arbitration as an alternative form of dispute resolution; however a growing number of statutory schemes whereby either one or both parties are compelled to submit to binding arbitration do exist. Statutory schemes requiring binding arbitration are normally found valid in limited contexts including resolving disputes in contracts with government agencies (see, e.g., *Hjelle* v. *Sornsin Construction Company* (N.D. 1969) 173 N.W.2d 431), resolving labor disputes with public employees such as police and fire fighters (see, e.g., *Buffalo* v. *New York State Public Employment Relations Board* (1975) 80 Misc.2d 741 [363 N.Y.S.2d 896], affd. (1975) 37 N.Y.2d 19 [371 N.Y.S.2d 404, 332 N.E.2d 290, 293]) and where the rights to be arbitrated have been created by federal statute (see, e.g., *Thomas* v. *Union Carbide Agric. Products Co.* (1985) 473 U.S. 568, 593-594 [87 L.Ed.2d 409, 427-428, 105 S.Ct. 3325]; see generally Allison, *The Context, Properties, and Constitutionality of Nonconsensual Arbitration: A Study of Four Systems*, J. of Dispute Resolution (Vol. 1990) No. 1, 1.)

Statutory schemes requiring binding arbitration have also been found valid when applied to highly regulated industries such as insurance or licensed professionals such as attorneys. (See, e.g., *Hardware Dealers' Mut. Fire Ins. Co.* v. *Glidden Co.*, *supra*, 284 U.S. 151 [binding arbitration clause to determine amount of loss required in every fire insurance policy]; *Guralnick* v. *Supreme Court of New Jersey* (D.C.N.J. 1990) 747 F.Supp. 1109, affd. (3d Cir. 1992) 961 F.2d 209 [compulsory binding arbitration of attorney/client fee disputes].) While states have broad power to regulate housing conditions and landlord-tenant relations (see *Loretto* v. *Teleprompter Manhattan CATV Corp.* (1982) 458 U.S. 419, 440 [73 L.Ed.2d 868, 885, 102 S.Ct. 3164]; *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129 [130 Cal.Rptr. 465, 550 P.2d 1001]), our research has not found rent disputes typically to be an area subject to compulsory binding arbitration.

Even in areas where statutory schemes requiring compulsory arbitration have been upheld, constitutionality often depends upon whether meaningful judicial review of the arbitrator's decision is provided. (See *Peick* v. *Pension Ben. Guar. Corp.* (7th Cir. 1983) 724 F.2d 1247, 1277 [compulsory arbitration constitutional where it is "merely the first step" in dispute resolution with subsequent court review]; *Mount St. Mary's Hospital* v. *Catherwood* (1970) 26 N.Y.2d 493 [311 N.Y.S.2d 863, 260 N.E.2d 508] [for compulsory

arbitration due process requires judicial review of whether the award was supported by the evidence in record].)

Our review of California statutes requiring compulsory arbitration demonstrates the Legislature has provided for substantive judicial review in almost all instances. Of the nine compulsory arbitration statutes located, six are subject to trial de novo or other evidentiary review. (Bus. & Prof. Code, §§ 6200, subd. (c), 6204, subd. (a), [arbitration of attorney fee disputes provides for trial de novo]; §§ 1141.11, 1141.20 [judicially ordered arbitration in superior courts with 10 or more judges for civil disputes where the amount in controversy does not exceed $50,000 provides for trial de novo]; Civ. Code, § 4800.9; § 1141.20 [value and division of community property subject to court ordered arbitration if total value does not exceed $50,000 provides for trial de novo]; Lab. Code, §§ 2685, 2691 [arbitration of pricing and product quality disputes arising out of contracts between garment manufacturers and contractors provides for trial de novo]; Civ. Code, § 845 [arbitration of costs of maintaining right-of-way of easement provides for court determination which is construed by *Healy* v. *Onstott, supra,* 192 Cal.App.3d at p. 616 to require trial de novo]; Lab. Code, §§ 5270, 5275, 5277 [certain workers' compensation disputes involving claimants represented by an attorney may be submitted to arbitration but arbitration decision has the same force and effect as that of a workers' compensation judge which is subject to review by the Workers' Compensation Appeals Board (Lab. Code, § 5900) and the Court of Appeal (Lab. Code, § 5950)].)

Additionally, consent to arbitration may be implied in two of the nine statutory schemes. Public Contract Code section 10240 provides for arbitration of disputes arising out of certain contracts with state agencies. However, by electing to enter into the specified contracts with the state, the contracting party in effect agrees to arbitration. Under Civil Code section 1793.22, commonly know as the "Lemon Law," an automobile manufacturer may be bound by the decision reached under a qualified third party dispute resolution process. (Civ. Code, § 1793.22, subd. (c).) Agreement to arbitrate however may be implied because it is the manufacturer who elects to set up the third party dispute resolution process. (Bus. & Prof. Code, § 472.2, subd. (a).)

In only one circumstance, disputes between insurers and insureds with respect to recovery of damages under uninsured motorist coverage, has the Legislature imposed compulsory binding arbitration on nonconsenting parties. (Ins. Code, § 11580.2, subd. (f); *United Services Automobile Assn.* v. *Superior Court* (1990) 221 Cal.App.3d 79, 83-84 [270 Cal.Rptr. 376].) The

Legislature's failure to impose binding arbitration on nonconsenting parties evidences a valid concern for preserving a party's right to due process through access to the courts.

We examine now the Chula Vista Municipal Code provisions to determine whether they can withstand the owners' due process challenge. As enacted by Ordinance No. 2282, the code provides that if a rent increase dispute is not resolved by negotiation the issue must be submitted to arbitration. (Chula Vista Mun. Code, § 9.50.085, subd. 1.) Arbitration is conducted pursuant to American Arbitration Association rules. (Chula Vista Mun. Code, § 9.50.085, subd. 4.) The arbitrator's decision must provide park owners with a "just and reasonable return on their property" and is binding on the parties. (Chula Vista Mun. Code, § 9.50.085, subd. 5.) The arbitrator's decision is "submitted" to the city council and written information submitted to the council is maintained at city hall. (Chula Vista Mun. Code, § 9.50.085, subds. 6, 7.)

As required by law, Chula Vista Municipal Code chapter 9.50 provides that park owners must be afforded a just and reasonable return on their property. (See *Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d at p. 165.) It provides however that decision is to be made by the arbitrator and simply "submitted" to the city council where it is to be "maintained." The ordinance provides for no review by the city council. More important, it fails to provide for a trial de novo or judicial review of the evidence should a party reject the arbitration award. The American Arbitration Association follows the voluntary arbitration rules set forth in section 1280 et seq. Under section 1286.2 grounds for a court vacating an award are essentially limited to fraud, corruption, or other misconduct of a party or the arbitrator. Further, the court may not review whether there is sufficient evidence to support the award. (*Moncharsh* v. *Heily & Blase, supra,* 3 Cal.4th at p. 11.)

If reasonably possible, legislation should be construed to preserve its constitutionality. (*Department of Corrections* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 197, 207 [152 Cal.Rptr. 345, 589 P.2d 853].) Here, to find the arbitration provision constitutional, this court would be required to delete the word "binding" or to add a requirement for a trial de novo or judicial review of the arbitration award for sufficiency of the evidence. A court may not engage in the wholesale rewriting of a statute in order to preserve its constitutionality. (*Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 282 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206].)

Accordingly, we find the binding arbitration provision unconstitutional as violating the due process rights of the owners.[5]

DISPOSITION

The order is affirmed.

Benke, Acting P. J., and Nares, J., concurred.

---

[5]In light of our decision, we do not address two additional issues raised by the owners: 1.) Purportedly improper service on Hanson, Maldonado-Hanson and Heywood, and 2) Negotiators' purported lack of standing.