Filed 11/28/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRUCE TRAN, | |
|    Plaintiff and Appellant, | G061633 |
|       v. | (Super. Ct. No. 30-2019-01063157) |
| QUE PHUNG THI NGUYEN, | O P I N I O N |
|    Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Donald F. Gaffney, Judge. Reversed in part and remanded.

Hutcherson Law, Kenton J. Hutcherson; Wilson Sonsini Goodrich & Rosati and Victor Jih for Plaintiff and Appellant.

Horvitz & Levy, Jeremy B. Rosen, Emily V. Cuatto, Jonathan Z. Morris; MBK Chapman and William D. Chapman for Defendant and Respondent.

\*       \*       \*

It sometimes seems like California has a statute for everything.  In this case, the parties dispute whether there is a civil cause of action for extortion.  The trial court agreed with defendant Que Phung Thi Nguyen's contention plaintiff Bruce Tran's extortion cause of action could only move forward if it arose out of a threat to initiate a false criminal or civil prosecution—and thus no such cause of action could be based on the facts in this case.  We disagree.

Civil Code sections 1566, 1567, and 1570 establish a right to rescission in cases in which a person's consent to a transaction was obtained by "menace":  threats of confinement, of unlawful violence to the person or his or her property, or of injury to a person's character.  This is effectively the civil version of extortion.  Here, Nguyen allegedly threatened to expose the existence of plaintiff's child birthed by another woman during his marriage; we conclude such a threat falls within the statutory prohibition.  However, because the cause of action which seeks rescission sounds in contract, rather than tort, no emotional distress damages are recoverable.  Because the civil extortion/rescission cause of action does not give rise to emotional distress damages, we find no error in the portion of the court's order sustaining Nguyen's demurrer to Tran's separate cause of action for intentional infliction of emotional distress.

We consequently reverse the judgment entered against plaintiff Bruce Tran, and remand the case with directions to allow him leave to amend his cause of action for recovery of the funds he paid to Nguyen as a result of her threats to reveal their affair— and the existence of their child—to his wife.

**FACTS**

Tran's first amended complaint (FAC) against Nguyen states one cause of action for intentional infliction of emotional distress, and one cause of action for civil

2

extortion.[1]  The complaint alleges Tran and his wife were married in 2003 and have two children.

Between 2010 and 2011, the Trans separated.  During their separation, Tran began a romantic relationship with Nguyen; a few weeks into the relationship, Nguyen informed Tran she was pregnant with his child.  Shortly thereafter, in June 2011, Tran ended the relationship.  In February 2012, Nguyen gave birth to a child and gave the child the last name of Tran.  She maintains Tran is the child's father.

Although Tran did not tell his wife about the child, he voluntarily played a role in the child's life; he was present for the child's birth and attended the child's first birthday party.

According to the FAC, Nguyen later "began to blackmail" Tran by demanding that he pay her thousands of dollars, or she would disclose their relationship and the child's existence to his wife.  Tran pleaded with Nguyen not to tell his wife.  He told her that learning of their relationship and the child's existence "could cause Mrs. Tran to commit suicide."

Nguyen persisted in her threats.  Tran claimed he was afraid he might lose his family.  He therefore paid Nguyen approximately $500,000 and purchased a BMW vehicle for her.

Around August 2017, Tran learned Nguyen had created a Facebook account in the name of the child, and she used it to post pictures featuring Tran, herself, and the child.  Fearing his wife might discover the account, Tran asked Nguyen to remove the photos of him, and make the account private.  She initially agreed to do so.  In October

---

[1]     Tran's wife alleged a separate cause of action for intentional infliction of emotional distress against Nguyen, as well as a cause of action seeking an order to set aside the gifts of alleged community property made by Tran to Nguyen.  Because the trial court overruled Nguyen's demurrer to the latter cause of action, no judgment has been entered in favor of Tran's wife, and neither she nor her causes of action are involved in this appeal.

2018, when he concluded Nguyen's financial demands would never cease, Tran refused to pay her more or buy her the home she demanded. Nguyen then added more than 500 photos to the child's Facebook account. In the account, Nguyen referred to Tran as her husband. She restored the account settings to public in late December 2018. In January 2019, Nguyen sent an email directly to Tran's wife, informing her of Tran's relationship with Nguyen and providing a link to the child's Facebook page.

The FAC alleges Nguyen is liable for civil extortion because she "obtained property or other consideration from [him], with [his] consent, induced by a wrongful use of force or fear" and that the fear was "induced by a threat to expose, or impute to, [him] disgrace or to expose a secret affecting [him]." Tran also alleged Nguyen was liable for intentional infliction of emotional distress "in the form of repeatedly extorting [him] by threatening to disclose to Mrs. Tran the previous relations [he] had with Defendant Nguyen and the secret existence of the Child." He alleged Nguyen's "conduct was outrageous because, among other reasons, it is civil extortion."

Nguyen demurred, arguing California law does not recognize a cause of action for civil extortion under these circumstances. She claims the intentional infliction of emotional distress cause of action fails because (1) Tran has not adequately alleged outrageous conduct, and (2) it violates Civil Code section 43.5, California's "anti-heart-balm" statute.

The trial court agreed with Nguyen, citing *Fuhrman v. California Satellite Systems* (1986) 179 Cal.App.3d 408 (*Fuhrman*), disapproved on other grounds in *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212, for the proposition that a claim in the nature of civil extortion, however labeled, is limited to a claim for the recovery of money obtained by the wrongful threat of criminal or civil prosecution, and then only if the threat is made with knowledge that the threatened claim is false. The court also concluded that a claim of liability based on Nguyen's threat to reveal the affair and the resulting child to Tran's wife "implicates the anti-heart-balm statute" because it is a claim arising out of the

4

"'seduction of a person over the age of legal consent.'" The court also relied on the anti-heart-balm statute (Civil Code section 43.5), in sustaining Nguyen's demurrer to the claim of intentional infliction of emotional distress.

Following the court's order sustaining Nguyen's demurrer without leave to amend to both causes of action alleged on behalf of Tran, the court entered a judgment against Tran.

## DISCUSSION

1. *Standard of Review*

A demurrer tests the sufficiency of a complaint by raising questions of law. (*Rader Co. v. Stone* (1986) 178 Cal.App.3d 10, 20.) "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.'" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) However, we do not consider factual contentions not contained in the complaint, unless they are matters subject to judicial notice. (*Ibid*.; *Arce v. Kaiser Foundation Health Plan, Inc*. (2010) 181 Cal.App.4th 471, 483, fn. 5 ["It is through this limited lens that we consider the sufficiency of [the] complaint against [the] demurrer"].)

"[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action." (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) Moreover, "in ruling on a demurrer, the trial court is obligated to look past the form of a pleading to its substance." (*Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 908; see *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 387 (*McBride*) [court looks past "[e]rroneous or confusing labels" to "the actual gravamen of [plaintiff's] complaint to determine what cause of action, if any, he stated."])

5

"'[I]it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment.'" (*Payne v. National Collection Systems, Inc*. (2001) 91 Cal.App.4th 1037, 1043-1044, quoting *Aubry v. Tri–City Hospital Dist*. (1992) 2 Cal.4th 962, 966–967.)

  2. *Civil Cause of Action Based on "Extortion"*

  Tran argues the court erred in concluding a cause of action for civil extortion can be stated only in cases involving "the wrongful threat of criminal or civil prosecution." He relies on a variety of authorities, both common law and statutory, to support his argument. This approach confuses the issue because a statutory right and a common law right that is developed independently of that statute, exist separate and apart from each other.

  Nonetheless, when we separate these two potential sources of a cause of action, we conclude the statutory right to rescind consent based on "menace," which is grounded in Civil Code sections 1566, 1567 and 1570, is analogous to the crime of extortion—and is applicable in the circumstances alleged here.

  a. *The Crime of Extortion*

  "'Extortion is the obtaining of property or other consideration from another, with his or her consent . . . induced by a wrongful use of force or fear." (Pen. Code, § 518.) "Fear, such as will constitute extortion, may be induced by a threat of any of the following: [¶] 1. To do an unlawful injury to the person or property of the individual threatened or of a third person[;] [¶] 2. To accuse the individual threatened . . . of a crime[;] [¶] 3. To expose, or to impute to him . . . a deformity, disgrace, or crime[;] [¶] 4. To expose a secret affecting him, her, or them[;] [¶] 5. To report his, her, or their immigration status or suspected immigration status." (Pen. Code, § 519.)

6

The concept of coerced consent is at the heart of extortion. (*People v. Goodman* (1958) 159 Cal.App.2d 54, 61 ["To constitute extortion the victim must consent, albeit it is a coerced and unwilling consent, to surrender of his property"].)

When extortion is based on the fear of a criminal accusation or a threatened exposure of a deformity, disgrace or secret, there is no requirement that the victim be innocent of the crime or free of the deformity, disgrace or secret; the misconduct is founded in the use of fear to obtain the victim's money or property without the victim's free consent. (*Flatley v Mauro* (2006) 39 Cal.4th 299, 327 ["threats to do the acts that constitute extortion under Penal Code section 519 are extortionate whether or not the victim committed the crime or indiscretion upon which the threat is based and whether or not the person making the threat could have reported the victim to the authorities or arrested the victim"]; *People v. Hesslink* (1985) 167 Cal.App.3d 781, 787 ["even if defendant had the right to arrest the victim, he was not at liberty to threaten to arrest her for the purpose of extorting money or property from her"].)

b.       *The Civil Right to Rescission of Consent Obtained Through Menace*

The crime of extortion focuses on coerced consent as a means of obtaining the victim's agreement to the transfer of property. Likewise, Civil Code section 1566 provides a civil remedy when a person's consent to a transaction is obtained through wrongful means: "A consent which is not free is nevertheless not absolutely void, but may be rescinded by the parties, in the manner prescribed by the Chapter on Rescission." Civil Code section 1567 expands the analysis: "An apparent consent is not real or free when obtained through: [¶] 1. Duress; [¶] 2. Menace; [¶] 3. Fraud; [¶] 4. Undue influence; or; [¶] 5. Mistake."

Civil Code section 1569 defines "[d]uress" as the confinement of a party or family member; Civil Code section 1570 defines "[m]enace" as the *threat* of duress, of "unlawful and violent injury to [a] person or property," or of "injury to the character of

7

[a] person."  These statutes provide a remedy of rescission in cases where a party's consent to a transaction was obtained through threats of injury to a person's character.

In *Morrill v. Nightingale* (1892) 93 Cal. 452 (*Morrill*), our Supreme Court found the plaintiff had stated a claim for rescission based on menace when he alleged his consent to a contract and promissory notes had been obtained as a result of defendants' threats to have him arrested for embezzlement: "In this case there was no arrest and confinement, hence no duress; but the history of the transaction, as disclosed by the findings, clearly indicates threats of imprisonment upon a charge of embezzlement, which, in effect, necessarily were threats of injury to the character of defendant Nightingale, and consequently a menace."  (*Id.* at pp. 455-456.)

In its evaluation of the claim of menace, the *Morrill* court analogized it to the crime of embezzlement:  "Section 518 of the Penal Code provides: 'Extortion is the obtaining of property from another, with his consent, induced by a wrongful use of force or fear, or under color of official right.'  The findings of the court disclose a state of facts lacking but few elements, if any, to fill the measure demanded by the foregoing provision of the Criminal Code of this state."  (*Morrill, supra,* 93 Cal. at p. 456.)

The *Morrill* court further observed that "[u]nder that kind of menace which consists in a threat of injury to the character of a person, it is entirely immaterial whether such person is guilty or innocent of the crime to be charged." (*Morrill, supra*, 93 Cal. at p. 456.)  The court then again analogized the situation to one involving criminal extortion:  "It certainly would be no defense to the accusation of extortion that the charges or publications threatened to be made by the defendant, and by which he obtained valuable property, were true.  The truth or falsity of these matters form no element in establishing the guilt or innocence of a defendant charged with extortion."  (*Id.* at pp. 456-457; see also *People v. Beggs* (1918) 178 Cal. 79, 83 [crime of extortion does not require that a threat of criminal prosecution to enforce debt be otherwise unlawful; the threat qualifies as an improper use of "fear" as defined by Penal Code section 519];

8

*Shasta Water Co. v. Croke* (1954) 128 Cal.App.2d 760, 764 ["the use of criminal prosecution as a means of collecting a debt is against public policy; such threats, like all threats of injury to the character of the party, constitute menace destructive of free consent"].)

In *Harper v. Murray* (1920) 184 Cal. 290 (*Harper*), the court held that an affirmative claim for rescission of an agreement based on menace was sufficiently stated where the plaintiff alleged the defendant—her ex-husband—had conspired with another man to have the latter gain the confidence of the plaintiff and compromise her in some fashion, and that the plaintiff thereafter signed a release of her right to alimony based on the defendant's threats to file affidavits accusing her of immoral relations. (*Id.* at p. 292.)

Although the *Harper* court noted the trial court had found the plaintiff was innocent of any immoral conduct, that finding was immaterial. The fact she was innocent of wrongdoing merely "enhance[d]" her claim. (*Harper, supra*, 189 Cal. at p. 293.) As the court explained, "[i]t was the threat to disgrace and humiliate plaintiff by charging her publicly with immoral conduct that constituted menace." (*Ibid*.)

Although these cases are dated , and we recognize that many relevant societal norms have changed over the intervening years, we agree with Tran that the statutes remain viable and, since the cases have not been overruled, we are bound by them. "Although the California Supreme Court is free to overrule its own prior decisions, the doctrine of stare decisis compels lower court tribunals to follow the Supreme Court whatever reason the intermediate tribunals might have for not wishing to do so. [Citations.] There is no exception for Supreme Court cases of ancient vintage." (*Mehr v. Superior Court* (1983) 139 Cal.App.3d 1044, 1048, fn. 3.)

Thus, we conclude that a cause of action for rescission based on menace is the civil statutory counterpart to a criminal extortion claim. And although the categories of threats that could qualify as "menace"—i.e., threats of confinement, of physical violence or of harm to character—are relatively narrow, this case satisfies the statutory

requirement because the threat of exposure alleged (that Tran had fathered a child with Nguyen while married to his wife), constitutes threatened harm to his character.

Nguyen conflates the statutory right to rescind a transaction based on menace with a distinct common law claim for recission based on "duress." Thus, she relies on *Leeper v. Beltrami* (1959) 53 Cal.2d. 195, 204 (*Leeper*), in which the Supreme Court repeatedly cites the Restatement of Restitution in assessing whether the threat of a civil lawsuit would qualify as a sufficient showing of duress to support a cause of action for rescission of a debt payment: "[t]he theory of recovery is not clear. But whether it be considered a suit for restitution to recover money paid under duress [citation], or an action for money had and received sounding in tort [citation], or, simply an action for money damages for the tortious conduct of the defendants resulting in injury to the plaintiffs, the basic nature of the wrongdoing of these defendants is duress." (*Id*. at p. 207.)

The *Leeper* court concluded that although the initiation of legal action, or a threat to do so, would not generally constitute duress under the common law definition, it would if the person making the threat knew his or her claim to be false. Likewise, *Fuhrman, supra,* 179 Cal.App.3d 408—the case cited by the trial court in this case— relies on *Leeper* for the proposition that "our Supreme Court has recognized a cause of action for the recovery of money obtained by the wrongful threat of criminal or civil prosecution." (*Fuhrman,* at p. 426.) *Fuhrman*, however, does not further analyze the issue after pointing out that such a cause of action would be viable only if the plaintiff had actually parted with some money, which the plaintiff in that case had not. (*Ibid.* ["The fatal flaw in plaintiff's action is that she apparently *never paid* the money defendants demanded in their letters"].)

None of those common law cases addresses a *statutory* claim for rescission based on menace, and thus none affects the viability of the claim in this case. The distinction between the statutory claim based on menace and the common law claim

10

discussed in *Fuhrman* and *Leeper* also explains why we are not persuaded by Nguyen's contention that a claim for civil extortion requires falsity because it "'is essentially a . . . form of *fraud*.'" (Citing *Fuhrman, supra*, 179 Cal.App.3d at p. 426, italics added.) Under Civil Code section 1567, "[m]enace" is distinguished from fraud, which constitutes a distinct basis for seeking rescission of a transaction.

> 3. *Nguyen's Other Policy Arguments*

Nguyen argues that allowing Tran to state a cause of action for recovery of the funds he paid to her violates other public policies. We disagree. Nguyen contends public policy prohibits a man from denying his paternity of a child based on privacy concerns (citing *Barbara A. v. John G.* (1983) 145 Cal.App.3d 369, 381). While that may be true, the argument is inapplicable here since the complaint alleges Tran was present at the child's birth, played a role in the child's life, and attended the child's birthday parties. There is no allegation Tran ever denied he was the father of this child.

Nguyen also contends allowing Tran to state a cause of action akin to extortion would undermine the fundamental right of a custodial parent (in this case Nguyen) to seek child support. Again, we disagree. Our opinion in no way prohibits Nguyen from seeking a child support order by any legal and legitimate means. What she is not entitled to do is attempt to coerce Tran to pay her child support that has not been either legally adjudicated or freely agreed to by Tran.

Nguyen relies on *McBride, supra*, 123 Cal.App.4th 379, for the proposition that allowing a father to recoup payments made to the mother of his child is against public policy. The case is inapposite. In *McBride*, a man sought to recoup payments he had made with the intent to support a child because he learned, two and a half years after the child's birth, that he was not the biological father. In light of that new information, the man claimed his earlier payments constituted unjust enrichment to the child's mother. (*Id.* at pp. 383-384.)

11

The *McBride* court's rejection of the claim was based on the man's status as "putative father" to the child, and the public policy which favors the preservation and stability of such non-biological relationships. (*McBride, supra*, 123 Cal.App.4th at p. 390 ["by *declining* to recognize an unjust enrichment claim, we create a *dis*incentive for an unmarried man to form a parental bond with a child if the bond is likely to be severed upon the child's proving to be another man's genetic offspring. The potential emotional and psychic costs to the child of such a rupture are far more significant than any financial injury a grown man might suffer from mistakenly supporting another man's child for a temporary period"].) That policy consideration has no application here.

Nguyen also argues Tran's attempt to recover the payments he made to her violates "the policy behind the anti-heart-balm statue." That statute, Civil Code section 43.5 (section 43.5), precludes causes of action based on acts of sexual seduction; specifically, "[a]lienation of affection," "[c]riminal conversation,"[2] "[s]eduction of a person over the age of legal consent," or "[b]reach of promise of marriage." Tran's claim for recovery of the payments he made to Nguyen is none of those. His claim for rescission is based on Nguyen's wrongful use of menace as a means of coercing him into paying her money he would not otherwise have agreed to pay. That is a different theory of recovery than any of the claims prohibited by section 43.5. (See *Smith v. Pust* (1993) 19 Cal.App.4th 263, 269 [The immunity created by section 43.5 does not apply if the alleged conduct "'breaches 'a duty of care *independent*' of those old causes of action"].)

Finally, Nguyen argues that Tran's claim for rescission of his payments is barred by the doctrine of unclean hands. While she acknowledges "the doctrine of unclean hands is usually a factual question unsuitable to demurrer," she claims that because the allegations of Tran's complaint establish unclean hands as a matter of law, the demurrer should be sustained on that basis. We are not persuaded.

---

[2]    Criminal conversation is "the tort of seducing a wife." (*Richelle L. v. Roman Catholic Archbishop* (2003) 106 Cal.App.4th 257, 266.)

As Nguyen characterizes it, Tran is "essentially seeking to undo a contract under which he agreed to pay consideration in exchange for [her] keeping her relationship with him and their child a secret from his wife." She claims that such an agreement is inequitable and contrary to California's policy of child support because an agreement to keep the child's paternity secret from Tran's wife "necessarily must have included an agreement not to pursue a child support action." We disagree. The parties could have privately and legally agreed that Tran would pay child support—even stipulated to such an award in court—without informing Tran's wife.

In any event, Nguyen's unclean hands argument fails because when a party's consent to an agreement is obtained through duress or menace, as Tran alleges here, that party is not considered to be in pari delicto. (*Colby v. Title Ins. and Trust Co.* (1911) 160 Cal. 632, 640-641.)

Having disposed of Nguyen's policy arguments, we conclude Civil Code sections 1566, 1567, and 1570 provide Tran with a statutory right to seek rescission of his payments to Nguyen on the grounds of menace—the civil equivalent of extortion—and thus we conclude the trial court erred in sustaining Nguyen's demurrer to his cause of action for "civil extortion" without leave to amend.

But that conclusion does not end our analysis because such a cause of action, which entitles a party to seek rescission of the consent underlying a transaction, sounds in contract rather than tort. Thus, it does not support recovery of emotional distress damages. (*O'Neill v. Spillane* (1975) 45 Cal.App.3d 147, 158-159 [rescission is a contractual remedy which allows for the recovery of consequential damages, but not damages for emotional distress]; see also Civ. Code, § 1688 [rescission is the extinguishment of a contract].) This limitation on the scope of recovery is consistent with the rule that the victim of a crime, including the crime of extortion, would be entitled to an award of restitution based solely on "economic loss." (See Pen. Code, § 1202.4, subd. (a)(1), (f).)

13

4. *Intentional Infliction of Emotional Distress*

Tran also argues the court erred by sustaining Nguyen's demurrer to his cause of action for intentional infliction of emotional distress. With this argument we cannot agree.

Tran's emotional distress claim is grounded squarely on the allegation of extortion (i.e., statutory menace) by Nguyen. Tran confirms this in his opening brief: "Ms. Nguyen committed outrageous conduct by repeatedly extort[ing] Mr. Tran by threatening to disclose to their previous romantic relationship and the alleged paternity of her son to Mr. Tran's wife."

As we have already explained, the civil remedy for the extortion is contractual in nature and does not support a claim for emotional distress damages. Tran cites no cases, based on either the statutory menace claim, or a common law claim of duress or civil extortion, in which a court has awarded emotional distress damages arising from such conduct. And in *Fuhrman*, *supra*, 179 Cal.App.3d 408, this court described the common law cause of action as "[a]n action for duress is an action for the recovery of moneys received by a defendant under the influence of duress." (*Id.* at p. 428.) Nothing more.

We consequently find no error in the court's order sustaining Nguyen's demurrer to Tran's cause of action for intentional infliction of emotional distress, without leave to amend.

## DISPOSITION

The judgment is reversed, and the case is remanded to the trial court with instructions to allow Tran leave to amend his cause of action for civil extortion based on

14

Civil Code sections 1566, 1567, and 1570.  The parties shall bear their own costs on appeal.

GOETHALS, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

SANCHEZ, J.